**Lopez HOUSE, Plaintiff–Appellant,**

v.

**Scott BELFORD, Defendant–Appellee.**

No. 89–1173.

United States Court of Appeals,
Seventh Circuit.

Argued May 17, 1991.

Decided Feb. 12, 1992.

712

Gary L. Starkman, Ross & Hardies, Thomas M. Ryan (argued), Arvey, Hodes, Costello & Burman, Chicago, Ill., for Lopez House.

Scott Belford (argued), Belford, Goldner & Koehl, Joliet, Ill., for Scott Belford.

David R. Butzen (argued), Jack O'Malley, Office of the State's Atty. of Cook County, Chicago, Ill., for James Davidson and Irvin Robbins.

Before COFFEY, MANION and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

Lopez House appeals the district court's *sua sponte* dismissal of his *pro se* cause of action wherein he alleged that James Davidson and Irvin Robbins presented perjured testimony at a hearing on the state's motion to dismiss House's petition for post-conviction relief; House also appeals the entry of summary judgment in favor of Scott Belford on House's 42 U.S.C. § 1983 claim that Belford violated his constitutional right to have a hearing in open court while conspiring with Robbins to prevent House's witnesses from attending the hearing on the state's motion to dismiss House's petition for post-conviction relief. We affirm.

## I. BACKGROUND

■ Lopez House was convicted in Cook County, Illinois on August 28, 1979, of raping his mother-in-law, Ida Morgan. Some 2½ years after the trial, Ida Morgan, the state's primary witness, signed an affidavit which said:

"The declarations I made under oath, pertaining to a violation against my person, on October 27, 1978 by Lopez House, were declarations of none existence and fabrication.

"I express this before trial court started to the State Attorney's office: 'I did not desire for Lopez House to be prosecuted, and face the possibility of being taken from his family, because of any fabrication.' I was informed to leave my declarations the same and let the Judge decide the case, or I could be face with a prosecution."

In March of 1982 House's wife hired Scott Belford to file a petition for post-conviction relief on the strength of Morgan's affidavit. Belford filed the petition pursuant to the Illinois Post Conviction Hearing Act on or about March 27, 1982. On May 10, 1982, at a hearing on the state's motion to dismiss the petition for post-conviction relief,[1] an associate of Belford's appeared before the court and moved to amend the petition

for post-conviction relief to include additional evidence because Ida Morgan had expired. The court granted a continuance until June 16, 1982, when a second hearing on the state's motion to dismiss the petition was held.

At the June 16, 1982 hearing on the state's motion to dismiss the petition for post-conviction relief, the Assistant State's Attorney, Irvin Robbins, argued that the court should dismiss the petition without an evidentiary hearing because the only evidence available was what he referred to as an inherently unreliable hearsay document. Belford countered, arguing that the affidavit was admissible as a statement against penal interest, since the affidavit amounted to a confession of perjury. The judge, who presided at the original trial, had an opportunity to observe and weigh the testimony of the witnesses (House as well as Morgan), stated that he believed Morgan signed the affidavit, but doubted whether an evidentiary hearing would prove anything other than the fact that she signed it. The judge further stated: "I look at her affidavit and in the absence of her, I don't believe what is contained in the affidavit." The court noted that it was aware the state possessed hearsay evidence that Morgan was afraid of House, and thus may have lied in the affidavit, but for some reason the state failed to place that evidence in the record. Thereupon Robbins volunteered to request Davidson, the Assistant State's Attorney who prosecuted House, to testify regarding House's threats. The court called a short recess to allow Robbins to contact Davidson to arrange for him to appear and testify. When the hearing resumed, the court accepted Davidson's testimony as an "oral counter affidavit" to Morgan's affidavit recanting her trial testimony. Davidson stated in his sworn testimony (in lieu of a written declaration) that Morgan was a willing witness who felt that House was a danger to society and should be incarcerated. He denied threatening to prosecute her if she changed

---

1. Under Illinois law, a petition for post-conviction relief may be dismissed without an evidentiary hearing if the petition fails to plead factual allegations, which, if true, demonstrate a violation of constitutional rights. *Cf. People v. Jennings*, 48 Ill.2d 295, 298, 269 N.E.2d 474 (1971).

her testimony. He further asserted that when House was released on bail because of an erroneous recording in the court documents reflecting the amount of bail, House proceeded to Morgan's residence and physically assaulted her; thereafter Morgan became fearful of him. At the close of Davidson's sworn testimony, Belford decided not to cross-examine him, as he stated that he believed the testimony was merely presented as an oral substitute for a written affidavit. After considering the pleadings filed and the oral affidavit, the judge determined that an evidentiary hearing was unnecessary, stating two reasons:

"Number one, I remember this case very well. I believed the complaining witness at the time she testified. I did not believe the defendant then or not now.

"In addition to that, I find this affidavit is unreliable as it is signed two and a half years after the date of the trial itself.

"Second reason for denial of the motion is the objection that the state and you would have, of course, as to hearsay. There is an additional hearsay problem here and I agree with you there should be times perhaps when the Court should take the case and a piece of evidence out of the hearsay rule even though it may not meet the traditional practice of the hearsay rulings when justice and fairness would demand it.

"However, considering this case as a whole, the nature of the circumstances, the offense and all that I have [been] presented by both the petitioner and by the respondent, I certainly do not find any equitable argument or equitable reasons for obviating the hearsay rule. And both of your cases are based on hearsay. And for that second reason, I will also deny your petition for evidentiary hearing."

Thereupon, the court denied House's petition for post-conviction relief.

House filed a *pro se* complaint in the United States District Court on November 27, 1985, pursuant to 42 U.S.C. §§ 1983 & 1985(2) against Davidson, Robbins and Belford, alleging that Robbins and Davidson violated House's constitutional rights when Robbins knowingly elicited false testimony from Davidson. The *pro se* complaint further alleged that Robbins and Belford conspired to interfere with House's civil rights pursuant to 42 U.S.C. §§ 1983 and 1985(2) in that they allegedly prevented House's family and friends from attending the hearing on the state's motion to dismiss the petition for post-conviction relief. House filed an application to proceed *in forma pauperis* along with his *pro se* complaint. On January 17, 1986, the district court denied House's application to proceed *in forma pauperis*, ruling that Robbins and Davidson were immune from liability under § 1983 even if Davidson perjured himself at the hearing, relying on the doctrines of absolute witness and prosecutorial immunity. The court further found that House's pleadings failed to adequately allege a conspiracy to deprive House of his civil rights pursuant to § 1985(2). Upon reconsideration, the court again denied the plaintiff leave to proceed *in forma pauperis*, but stated that the denial was granted "without prejudice to [House] filing within thirty days an amended complaint against Belford and Robbin[s]." The trial judge granted House leave to file his amended complaint against Belford and Robbins *in forma pauperis* on April 29, 1986, and directed the clerk to remove Davidson's name from the caption of the case. After Robbins and Belford filed and briefed motions to dismiss House's amended complaint, the district court dismissed the § 1985(2) cause of action against Robbins and Belford, since the section applies only to cases in federal courts (the alleged violation of House's rights occurred in state court), and dismissed the § 1983 cause of action against Robbins, finding that Robbins' prosecutorial immunity barred House from proceeding with that claim.[2] The district judge granted Belford's motion for summary judgment

---

**2.** The dismissal of Robbins was entered on the docket as a minute order rather than a final judgment subject to immediate appeal pursuant to Fed.R. of Civ.P. 54(b).

on December 28, 1988. The court found that the Sixth Amendment right to a public trial[3] was immaterial to House's claim, as a post-conviction hearing is a civil proceeding, and the right to a public trial based upon the Sixth Amendment applies only to criminal trials. And while questioning House's standing to base his claim of a right to open court on the First Amendment, the court based its entry of summary judgment on House's failure to allege facts sufficient to support his charges of conspiracy in the complaint, supporting motions and responsive pleadings. The court stated that "the inferences that House relies on to support his conspiracy theory are so unreliable that no reasonable trier-of-fact could accept them."

In his appeal docketed January 26, 1989, which House erroneously entitled *House vs. Davidson, et al.,* House stated that he was appealing the "Memorandum Opinion and Order dated 12–28–88." According to his affidavit of service, House served notice of the appeal upon Belford alone, and in his motion before this Court for the appointment of counsel the appellant singularly named Belford as a defendant. Nearly twenty-two months after House filed his appeal, Davidson and Robbins received what they assert was their first notice that an appeal had been taken when they received a copy of the appellant's counsel's motion for an extension of time for filing the appellant's brief.[4] When the appellant filed his brief on November 29, 1990, the certificate of service stated that he had mailed a copy to Belford and Davidson. The arguments in the brief provided the first notice to either Davidson or Robbins that House was appealing the orders dismissing them from the suit. On December 20, 1990, Davidson and Robbins filed a motion requesting that they be dismissed from this appeal for lack of jurisdiction, and we issued an order on February 13, 1991, referring consideration of the jurisdictional issue to the merits panel.

## II. ISSUES

On appeal, the issues we address are: 1) whether this Court possesses jurisdiction to address the appellant's arguments concerning Davidson and Robbins; 2) whether the district court erred in granting House leave to proceed *in forma pauperis* on his claim against Robbins and Belford alone; 3) whether the district court erred in holding that Davidson and Robbins were immune from House's § 1983 claim; and 4) whether the district court erred in granting Belford's motion for summary judgment on House's claim that Belford conspired with Robbins to deny public access to his post-conviction hearing.

## III. JURISDICTION

House's notice of appeal specifically stated that he was appealing the final order of December 28, 1988. Further, the notice of appeal was served upon Belford alone and failed to name Robbins or Davidson[5] as parties-appellees. Robbins and Davidson assert that this Court is without jurisdiction to consider them as parties to the appeal because of House's failure to include their names in the notice of appeal as well as House's failure to refer to the order denying *in forma pauperis* status to the claim against Davidson and/or the order granting Robbins' motion for summary judgment.

---

**3.** We view House's claim that the courtroom was closed for the oral argument on the state's motion to dismiss the petition for post-conviction relief with a certain degree of skepticism, since witnesses frequently are excluded from the courtroom until it is time for them to testify, and there is no evidence in the record that anyone else was barred from entry. But in reviewing the district court's granting of summary judgment, we accept the allegations as true. *See Beard v. Whitley County, REMC,* 840 F.2d 405, 409 (7th Cir.1988). We note that a court is usually considered as being "closed" when only the participants and court personnel are present with members of the general public barred.

**4.** It seems evident that Davidson's and Robbins' attorney received actual notice of the appeal much earlier, for he filed an appearance in the district court less than three weeks after House filed his notice of appeal.

**5.** The notice of appeal was entitled *House vs. Davidson, et al.,* but that was an error, for the case name is *House v. Belford.*

It is well settled that "[a]n appeal from the final judgment draws in question all prior non-final orders and all rulings which produced the judgment." *R.E. Davis Chemical Corp. v. Diasonics, Inc.*, 826 F.2d 678, 687 (7th Cir.1987) (quoting 9 J. Moore, B. Ward & J. Lucas, 9 *Moore's Federal Practice* ¶ 203.18, at 3–80 (2d ed. 1987)); *see also Bastian v. Petren Resources Corp.*, 892 F.2d 680, 682 (7th Cir. 1990). Indeed, even when the notice of appeal erroneously mentions merely a segment of the judgment:

> "The general rule which has developed is that an error in designating the judgment or a part thereof will not result in a loss of appeal if the intent to appeal from the judgment complained of may be inferred from the notice and if the appellee has not been misled by the defect."

*Cardoza v. Commodity Futures Trading Comm'n*, 768 F.2d 1542, 1546 (7th Cir. 1985). As the Supreme Court has noted:

> "It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities. 'The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.'"

*Foman v. Davis*, 371 U.S. 178, 181–82, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). "Dismissals of appeals on technicalities are to be avoided." *United States, ex rel., Zembowski v. DeRobertis*, 771 F.2d 1057, 1064 (7th Cir.1985).

■■■ Robbins' and Davidson's argument that House was required to cite the orders dismissing them from the suit in the notice of appeal in order to vest this Court with jurisdiction over them in our opinion misconstrues the nature of the district court's order denying *in forma pauperis* status to House's claim against Davidson and the order granting Robbins' motion for summary judgment. Federal Rule of Civil Procedure 54(b), in pertinent part, states:

> "When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

In multiple party suits, the dismissal of one party without the entry of a partial final judgment pursuant to Rule 54(b) prevents the order from becoming appealable until the entry of a final judgment as to all parties. *See Auriemma v. City of Chicago*, 906 F.2d 312, 313 (7th Cir.1990). Davidson and Robbins argue nonetheless that the denial of House's application to proceed *in forma pauperis* was a final, appealable order pursuant to *Roberts v. United States District Court*, 339 U.S. 844, 845, 70 S.Ct. 954, 955, 94 L.Ed. 1326 (1950) ("The denial by a District Judge of a motion to proceed *in forma pauperis* is an appealable order."). While the denial of a motion to proceed *in forma pauperis* is an appealable order, the district judge's reconsideration of this order and ultimate reversal and granting of House's motion to proceed *in forma pauperis* against two of the parties, Robbins and Belford, transforms the "dismissal" of the third party, Davidson, into an adjudication of the "liabilities of fewer than all the parties," thus requiring the entry of a Rule 54(b) judgment in order to be appealable immediately. Because there was no entry of final judgment pursuant to Rule 54(b), the dismissal of Davidson was not appealable until such time as there was an entry of a final judgment as to all three parties. Likewise, there was no Rule 54(b) judgment entered for the summary judgment dismissing Robbins from the suit. Since neither the dismissal of Davidson nor the dismissal of Robbins constituted appealable final judgments, House's appeal of the final judgment entered December 28, 1988, dismissing Belford brings the dismissals of Robbins and Davidson before us as

well. *See Diasonics*, 826 F.2d at 687.[6]

██ Davidson and Robbins argue that because they were named in neither the notice of appeal, the certificate of service nor House's motion for appointment of counsel, "it was not the appellant's intent to appeal the dismissal of Davidson and Robbin[s]." This argument assumes that House erred in referring only to the final judgment in his notice of appeal, an assumption we rejected above. Furthermore, we note that Federal Rule of Appellate Procedure 3(c) requires that the notice of appeal contain only the names of all appellants rather than all appellees. Since Davidson and Robbins have failed to rely upon Appellate Rule 3(c) in their argument concerning House's failure to name them in the notice of appeal, we need not decide whether that Rule requires naming appellees as well. We note, however, that the courts that have considered this issue have rejected the position that Rule 3(c) requires the naming of each appellee in the notice of appeal. *See, e.g., International Union, UAW v. United Screw & Bolt Corp.*, 941 F.2d 466, 471 (6th Cir.1991); *Longmire v. Guste*, 921 F.2d 620, 622 (5th Cir.1991); *Battle v. District of Columbia*, 854 F.2d 1448, 1450 (D.C.Cir.1988). Even though courts have declined to require the appellant to name each appellee in the notice of appeal, we do not think it is good legal practice to fail to do so.

██ Davidson and Robbins assert that they were prejudiced by House's failure to notify them of his appeal.[7] They imply that they were unaware of House's appeal until they received notice in November, 1990, through a copy of a motion for an extension of time to file the appellant's brief as well as the copies of the appellant's brief that each of them received. It is evident, however, that the Illinois State Attorney's office was aware of the appeal, for the Assistant State's Attorney who represented Davidson and Robbins in the district court filed an appearance in the district court on February 15, 1989, less than three weeks after House filed his notice of appeal. This implies that Davidson's and Robbins' attorney understood that House's appeal automatically included the orders dismissing Davidson and Robbins. The Assistant State's Attorney later moved to withdraw as counsel of record apparently because the clerk's office erroneously listed him as counsel for Belford.[8] The Assistant State's Attorney's withdrawal as counsel of record fails to counter the implication that he (Assistant State's Attorney) was aware that House's appeal of the final judgment might well bring the dismissal of the state defendants, Davidson and Robbins, into question on appeal, for "[a]n appeal from the final judgment draws in question all prior non-final orders and all rulings which produced the judgment." *Diasonics*, 826 F.2d at 687. Furthermore, while the appellants contend that the lack of official notice prejudiced them, they fail to delineate any specific harm. Since House's notice of appeal from the final judgment brings into question the non-final orders dismissing Davidson and Robbins from this case, the record fails to demonstrate that the appellants suffered prejudice from the delay in their receipt of official notice of the appeal, and the failure to name Davidson and Robbins in the notice of appeal is a technical error, we hold that the Court has jurisdiction to rule on the merits of House's appeal of the orders dismissing Davidson and Robbins from this suit.

---

**6.** The appellees cite *Cole v. Tuttle*, 540 F.2d 206 (5th Cir.1976), for the proposition that the failure to designate an order in the notice of appeal deprives the appellate court of jurisdiction over that order. *Cole* is inapplicable, for in that case the appellant appealed only two interlocutory orders, but failed to appeal the final order. In the instant case, House has appealed from the final order.

**7.** Any financial prejudice would be against Cook County, for Ill.Rev.Stat. ch. 85 ¶ 9–102 states that "[a] local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article."

**8.** In his motion to withdraw, the Assistant State's Attorney specifically noted that "Plaintiff appears to be appealing the dismissal of Scott Belford."

## IV. *IN FORMA PAUPERIS*

In our September 26, 1990 order appointing House counsel for purposes of appeal, we directed counsel to "address in addition to whatever other issues he may wish to raise, the issue of whether the district court may properly grant leave to proceed *in forma pauperis* only as to certain issues or parties in light of *Dixon v. Pitchford,* 843 F.2d 268 (7th Cir.1988)." Unsurprisingly, counsel argues that under *Dixon,* the district court erred in allowing House to proceed on his "open court" claim but not on the subornation of perjury claim.

In *Dixon,* we addressed the question of whether 28 U.S.C. § 1915(a)[9] permits the district court to grant *in forma pauperis* status for one issue of an appeal while denying it on another. We held that if the district court grants *in forma pauperis* status on appeal for one issue, it must grant such status on all issues because: 1) the statute does not suggest "that a court may grant leave to proceed on one claim of a suit but not on another;" 2) the cost on appeal is the same regardless of the number of issues; and 3) concerns of judicial economy weigh in favor of allowing all issues to be appealed, for that avoids addressing repeated motions "directed to the enlargement of the number of issues." *Id.* at 270. Recently we addressed the specific question we directed counsel to raise in this appeal, whether the district court may properly grant *in forma pauperis* status only to certain issues at the complaint stage rather than to the entire case. *See Aiello v. Kingston,* 947 F.2d 834 (7th Cir.

1991). We held that under 28 U.S.C. § 1915(a), when "the complaint states multiple theories of relief against the same defendants ... [t]he district judge must grant or deny leave to proceed without prepayment of costs with respect to all claims in such a complaint...." *Id.* at 836.[10] But *we specifically reserved the issue directly presented in the instant case of whether the district court may dismiss a claim pursuant to 28 U.S.C. § 1915(d)*[11] *for frivolity or maliciousness while granting in forma pauperis status to a non-frivolous claim pursuant to § 1915(a). See id.* We noted that "[i]f the district court carves out of a case a claim that is frivolous or malicious, the choice between doing so before or after allowing the plaintiff to proceed *in forma pauperis* does not call for reversal." *Id.*

The district court's denial of House's motion for leave to file *in forma pauperis,* "finding the complaint frivolous as a matter of law," was in effect a dismissal pursuant to § 1915(d) because it would have been immediately appealable pursuant to *Roberts v. United States District Court,* 339 U.S. 844, 70 S.Ct. 954, 94 L.Ed. 1326 (1950), if the district judge had not reconsidered the denial. Upon reconsideration, the district court once again denied the plaintiff's motion to proceed *in forma pauperis,* but on the second occasion the denial/dismissal was "without prejudice to plaintiff's filing within 30 days an amended complaint against Belford and Robbin[s]." This refusal to grant House's motion for *in forma pauperis* status on one issue but without prejudice to filing an amended complaint for the other issue is the equivalent of a

---

**9.** Section 1915(a) states:

"Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that he is entitled to redress.

"An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith."

**10.** We also held that when a claim against a separate defendant is "sufficiently distinct that

it could be severed and pursued independently under Rule 21, occasioning additional costs that a solvent plaintiff must prepay (such as the expense of serving process on an additional party)," the court may refuse to grant *in forma pauperis* status to that claim. *Id.*

**11.** Section 1915(d) states:

"The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or *if satisfied that the action is frivolous or malicious.*" (Emphasis added).

dismissal of one cause of action but not the other cause of action under § 1915(d). Thus, we must decide whether it is permissible for the district court to utilize § 1915(d) to accomplish what it may not do under § 1915(a): grant *in forma pauperis* status to one claim while denying it on a frivolous claim.

In *Williams v. Faulkner,* 837 F.2d 304 (7th Cir.1988), *aff'd sub nom. Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), we reviewed the district court's *sua sponte* dismissal pursuant to § 1915(d) of a prisoner's claim that prison officials violated his Eighth Amendment rights by depriving him of medical treatment and of his Fourteenth Amendment due process rights by transferring him to a less desirable cell than the one in which he had been living. We affirmed the district court's dismissal of the due process claim, but reversed the Eighth Amendment claim, holding that it was "not frivolous within the meaning of 28 U.S.C. § 1915(d) because we cannot state with certainty that Williams is unable to make any rational argument in law or fact to support his claim for relief. Because Williams' eighth amendment claim was not frivolous as to some of the defendants, the district court should have required those defendants to answer the complaint." *Id.* at 308. While we did not directly address the question of whether the dismissal of a frivolous claim but not a possibly valid claim under § 1915(d) was permissible, we implicitly approved such a practice. In the Supreme Court's affirmance of *Williams,* it likewise approved the practice of dismissing frivolous claims while granting *in forma pauperis* status to non-frivolous claims without discussing whether the term "action" in § 1915(d) may be construed to mean "cause of action." But the Supreme Court's discussion of § 1915(d) provides strong policy reasons for interpreting "action" to mean "cause of action":

"Section 1915(d) is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a *claim* based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."

*Neitzke v. Williams,* 109 S.Ct. at 1832–33 (emphasis added). Adjudicating frivolous claims wastes judicial resources, and responding to frivolous claims wastes private resources. Hence, the policy behind § 1915(d) favors viewing the term "action" in that section to mean "cause of action" or "claim." Thus, when a plaintiff seeks *in forma pauperis* status to pursue a complaint containing both a non-frivolous as well as a frivolous claim (within the meaning of § 1915(d)), we hold that the district court may dismiss that part of the claim that it finds frivolous and allow the plaintiff to proceed to litigation *in forma pauperis* on the meritorious part of the claim. We are aware of no possible harm to *pro se* plaintiffs in refusing to waste judicial or private resources on claims for which the plaintiff "is unable to make any rational argument in law or fact to support his claim for relief." *Williams v. Faulkner,* 837 F.2d at 308.

## V. IMMUNITY

▮▮▮ The appellant argues that the district court erred in finding House's claim against Davidson frivolous on the ground that witnesses are entitled to immunity because "allegations of a conspiracy between an allegedly perjurious witness and the prosecutor states a claim for relief under § 1983."[12] Davidson argues that the ap-

---

**12.** House concedes that Robbins' absolute prosecutorial immunity from § 1983 liability bars charging conspiracy to use perjured testimony, but suggests that Robbins' alleged conduct in directing a deputy to prevent House's family

and friends from entering the hearing may be "characterized as extra judicial legal advice to a county employee." Under *Burns v. Reed,* —— U.S. ——, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), absolute prosecutorial immunity from

pellant has waived this argument, for the complaint against Davidson failed to allege a conspiracy between Davidson and Robbins, and arguments raised for the first time on appeal are waived. Davidson is correct that we will not ordinarily consider an argument raised for the first time on appeal. But we review a district court's determination that a claim is frivolous within the meaning of 28 U.S.C. § 1915(d) not only to determine whether the arguments the plaintiff made were valid, but also to determine whether the plaintiff *could* have made "any rational argument in law or fact to support his claim for relief." *Williams v. Faulkner*, 837 F.2d at 308. Thus, because of this unique standard of review, we will proceed to consider the question of whether an alleged conspiracy between a witness and prosecutor bars the witness's immunity from § 1983 damages.

■ The Supreme Court has made clear that non-governmental witnesses testifying in any court action are entitled to absolute immunity from § 1983 liability: "At least with respect to private witnesses, it is clear that § 1983 did not abrogate the absolute immunity existing at common law...." *Briscoe v. LaHue*, 460 U.S. 325, 334, 103 S.Ct. 1108, 1115, 75 L.Ed.2d 96 (1983). Absolute witness immunity from § 1983 liability is likewise applicable to government witnesses: "[T]o the extent that traditional reasons for witness immunity are less applicable to governmental witnesses, other considerations of public policy support absolute immunity more emphatically for such persons than for ordinary witnesses." *Id.* at 342–43, 103 S.Ct. at 1119. Thus, it is evident that Davidson was entitled to absolute immunity from § 1983 liability for his testimony at the post-conviction hearing, even if, as House alleges, he presented that testimony in furtherance of a conspiracy with Robbins to deprive House of due process at his post-conviction hearing.

■ The appellant contends that even though Davidson is immune from § 1983 liability for his testimony, nonetheless he is subject to § 1983 prosecution for the alleged underlying conspiracy between him and Robbins to present the false testimony. House relies upon *San Filippo v. U.S. Trust Company*, 737 F.2d 246 (2nd Cir.1984), *cert. denied*, 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985), for his argument that Davidson is subject to § 1983 liability for the purported conspiracy to commit perjury. In *San Filippo*, the Second Circuit held that while witnesses are entitled to absolute immunity for their testimony, the immunity does not extend "to cover extra-judicial conspiracies between witnesses and the prosecutor to give false testimony." *Id.* at 255. Despite the Court's holding that absolute immunity was inapplicable to an extra-judicial conspiracy to present false testimony, the court in *San Filippo* held that the plaintiff's conclusory allegations of a conspiracy (the fact that the prosecutor and detective met with the witnesses prior to their testimony) were insufficient to support the claim. *See id.* at 256. While a number of district courts have followed *San Filippo*'s holding that absolute witness immunity from § 1983 liability is inapplicable to an alleged conspiracy between a witness and a prosecutor, neither the appellant's brief nor our independent research has revealed any other appellate case holding the same. Nor are we aware of any case at the district or appellate level holding a person liable under § 1983 for conspiracy to present perjured testimony. Furthermore, in our opinion the Second Circuit's effort to differentiate between a conspiracy to present perjured testimony and the act of presenting perjured testimony is a distinction without a difference. A person may not be prosecuted for conspiring to commit an act that he may perform with impunity. Thus, we fail to understand how a witness can be held liable under § 1983 for conspiring to commit an act for which he is protected from § 1983 liability by absolute immunity. Even if there could be a conspir-

liability for damages pursuant to § 1983 is unavailable for the giving of legal advice to police. *See id.* 111 S.Ct. at 1944–45. But instructing a deputy to prevent someone from entering a courtroom, as House alleges Robbins did, falls far short of constituting "legal advice." Thus, *Burns* does not support infringing on Robbins' prosecutorial immunity.

acy to commit perjury that would be actionable under § 1983, the complaint in this case, alleging on the basis of a mere assumption without a scintilla of support in the record that Robbins called Davidson as a witness knowing he would lie under oath and that Davidson intentionally perjured himself, fails to support such a claim. We hold that the district court properly dismissed House's claim against Davidson as frivolous, for House is unable to make a rational argument in law or fact to overcome Davidson's absolute immunity from § 1983 liability. *Cf. Williams v. Faulkner*, 837 F.2d at 308.

## VI. CONSPIRACY

■ In House's amended complaint, he alleged that Belford (his attorney) and Robbins conspired to deprive him of his right to a hearing in open court through excluding his friends and family from the courtroom during the hearing of the state's motion to dismiss House's petition for post-conviction relief. As the district court noted, since Robbins possesses absolute prosecutorial immunity under § 1983, *see Imbler v. Pachtman*, 424 U.S. 409, 427, 96 S.Ct. 984, 983, 47 L.Ed.2d 128 (1976), House's only hope to recover damages was to recover from Belford. The district court granted Belford's motion for summary judgment because "the inferences that House relies on to support his conspiracy theory are so unreliable that no reasonable trier-of-fact could accept them." Mem. at 13 (Dec. 28, 1988).

In § 1983 actions alleging a deprivation of constitutional rights through a conspiracy, we have held that:

"In order to establish a conspiracy, the plaintiff must demonstrate that the state officials and the private party somehow reached an understanding to deny the plaintiffs their constitutional rights.

. . . .

"A conspiracy may be demonstrated by circumstantial evidence, *Hampton v. Hanrahan*, 600 F.2d 600 (7th Cir.1979); however, mere allegations of a conspiracy are insufficient to withstand a motion to dismiss. *See e.g., Tarkowski v.*

*Robert Bartlett Realty*, 644 F.2d 1204, 1206 (7th Cir.1980); *Dieu v. Norton*, 411 F.2d 761 (7th Cir.1969)."

*Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1352 (7th Cir.1985). House's amended complaint included the following allegations from which he infers a conspiracy:

1) Robbins instructed an unknown deputy to prevent House's wife and witnesses from entering the courtroom;

2) Belford neglected to object to statements Robbins made during the oral argument that Belford knew were false;

3) When House's wife and witnesses complained to Belford that they were being excluded from the courtroom, he instructed them to wait in the hall and he would call them in shortly;

4) Belford allowed Davidson to testify without calling House's witnesses to contradict Davidson's testimony;

5) Belford failed to request an opportunity to enter documentary evidence contradicting Davidson's testimony into the record; and

6) Belford "knowingly conspired with the immune prosecutor Irvin Robbin[s] to deprive Plaintiff of his constitutional right to open court by excluding Plaintiff wife and Public from post-conviction hearing. . . ."

It is evident that the complaint constituted "mere allegations of a conspiracy," and House failed to even allege, much less demonstrate, that Belford and Robbins "somehow reached an understanding to deny [House his] constitutional rights." *Moore*, 754 F.2d at 1352. In Belford's affidavit supporting his motion for summary judgment, he asserted that House's wife and friends came to the hearing "to testify that they witnessed Ida Morgan's recantation." Belford categorically denied being involved in any conspiracy to exclude House's family and friends from the courtroom:

"I did not speak to Mr. Robbins before the hearing began. The entirety of my discussions with Mr. Robbins are contained within the transcript. We never discussed my witnesses or the attendance of the public at the hearing. I

never spoke to any of the court personnel other than the court reporter, clerk, and judge. If the witnesses or any other persons were excluded from the courtroom before, during, or after the hearing by any deputy, I was unaware of it.

. . . .

"To my knowledge, no one was barred from the hearing on the motion to dismiss Mr. House's petition. I neither discussed with anyone the exclusion of people from that hearing nor directed anyone to exclude people from that hearing. I did not conspire with James Davidson, Irvin Robbins, Judge Crowe, or anyone else to bar anyone from that hearing. In fact, I repeatedly asked permission to present the testimony of the witnesses whose affidavits are attached."

In his affidavit opposing summary judgment, House denied that all conversations between Robbins and Belford were recorded in the transcript: "A conversation between State Prosecutor Robins [sic], Judge Crowe and defendant Belford was not recorded, therefore, the contents of the conversation is unknown." [13] House further argued in his brief in opposition to Belford's summary judgment motion "that it could be easily inferred from the records that defendant Belford, Mr. Robbins, Davidson and Judge Crowe had a 'meeting of the minds,' which occurred in the Judge's chambers. Plaintiff contends that such a 'meeting of the minds' is the nexus of his conspiracy allegations." As Judge Moran noted in his order granting Belford's motion for summary judgment, no reasonable fact finder could draw an inference of conspiracy from the facts House alleged. A mere conference in chambers among the judge, the prosecutor and the defense attorney certainly falls far short of leading to an inference of a conspiracy. Furthermore, Belford's other acts of which

House complains likewise fail to lead to even an inference of conspiracy. Davidson's "oral affidavit" was hearsay evidence presented in opposition to the hearsay evidence contained in Ida Morgan's affidavit in order that the court might decide whether an evidentiary hearing on House's petition for post-conviction relief was necessary. Belford stated on the record that he believed he was not entitled to cross-examine Davidson because "[i]f it were an affidavit I couldn't cross-examine the affidavit. So I'm not going to ask for a right to cross-examine him unless the Court should allow me to do so." Robbins treated Davidson's testimony as if it were a written affidavit subject to cross-examination only if the court granted House's request for a post-conviction hearing, and the judge accepted Robbins' assessment of the proceedings without comment. Thus, there was nothing suspicious in Belford's failure to cross-examine Davidson. In regard to Belford asking the House family and friends to remain in the hall until he called them, we see nothing unusual in an attorney following the accepted procedure, if he so desires, of instructing his potential witnesses to remain outside the courtroom until it is time to testify. While House's wife asserted in her affidavit that she did not intend to testify, House has failed to counter Belford's allegation in his affidavit that he viewed Mrs. House as a potential witness. Since the record is bare of any evidence that could lead a reasonable person to infer a conspiracy between Robbins and Belford, we hold that the district court properly granted Belford's motion for summary judgment to dismiss House's claim against him.[14]

## VII. CONCLUSION

In summary, we note that while the technical deficiency of House's notice of appeal failed to deprive us of jurisdiction over the

---

13. In another supporting affidavit opposing the motion for summary judgment, House's wife denied that she attended the hearing with the purpose of testifying.

14. On appeal, Belford has argued that there is no First Amendment right to open court in hearings on a motion to dismiss a petition for post-conviction relief in Illinois courts, and that

House was without standing to raise the issue even if there were such a right. In view of our holding that House failed to allege with sufficiency a conspiracy between Belford and Robbins to withstand the motion for summary judgment, we need not decide these additional issues.

issues concerning Davidson and Robbins, it should make little difference to them, for they both possess absolute immunity from House's § 1983 allegations, and Davidson was properly dismissed from the suit at the complaint stage. Furthermore, House's unsupported allegations of a conspiracy between Robbins and Belford failed to sufficiently allege an agreement between them to deprive House of a constitutional right. The judgment of the district court is

AFFIRMED.