Alvy T. McQUEEN Plaintiff,

v.

UNITED STATES of America, et al. Defendants.

No. H–01–3868.

United States District Court, S.D. Texas. Houston Division.

March 31, 2003.

John A. Townsend, Townsend & Jones, Houston, TX, for plaintiff.

Samuel G. Longoria, U.S. Attorney's Office, Houston, TX, for U.S., defendant.

Christopher J. Kayser, U.S. Dept. of Justice, Tax Div., Washington, DC, for U.S. Dept. of Justice, U.S. Dept. of Treasury, defendants.

Joseph A. Pitzinger, III, Dept. of Justice, Tax Div., Dallas, TX, for Susie M. Wong, Mark W. Hughes. Crispin L. Smith, Stuart D. Gibson, Angelo A. Frattarelli, defendants.

## MEMORANDUM AND ORDER

WERLEIN, District Judge.

### I. Background

Plaintiff Alvy T. McQueen ("McQueen") was indicted in 1992 on 24 counts of diesel fuel tax evasion. He pled guilty to counts 1 and 23 of the Indictment, which charged him with willfully attempting to evade federal diesel fuel excise taxes. McQueen also waived indictment and voluntarily entered a guilty plea to a separate criminal information charging him with one count of conspiracy to impede the collection of federal diesel fuel excise taxes. On March 25, 1993, Judge Melinda Harmon sentenced McQueen to 60 months in prison.

The instant case represents the current engagement in what Judge Hal Cobb termed "an oppressive litigation war [waged by McQueen and his lawyer, John Townsend] against almost everyone connected with McQueen's criminal prosecution." *McQueen v. United States,* 5 F.Supp.2d 473, 475 (S.D.Tex.1998) (Cobb, J. sitting by designation), *aff'd without opinion,* 176 F.3d 478 (5th Cir.1999), *cert. denied,* 528 U.S. 823, 120 S.Ct. 71, 145 L.Ed.2d 60 (1999). The civil cases preceding this one were as follows:

"McQueen I": McQueen sued in the Western District of Texas to enjoin the Comptroller of Public Accounts of the State of Texas from administering the applicable Texas tax scheme, which he claimed was in violation of federal procedural due process requirements. Denial of the injunctive relief was affirmed because the Tax Injunction Act deprived federal court of jurisdiction to consider the complaint. *See McQueen v. Bullock,* 907 F.2d 1544, 1551 (5th Cir.1990).

"McQueen II": McQueen sued in the Southern District of Texas to enjoin the United States and the Texas Comptroller based on tax assessments that McQueen claimed were based on information obtained in violation of Fed.R.Crim.P. 6. Dismissal of this action was affirmed based upon the Doctrine of Sovereign Immunity that precluded federal jurisdiction. *Id.*[1]

"McQueen III": McQueen sued the United States in the Southern District

---

[1]. *McQueen I* and *McQueen II* were consolidated on appeal in the Fifth Circuit.

of Texas claiming, *inter alia,* that the United States Department of Justice had violated the Freedom of Information Act (FOIA). This case, filed as Civil Action No. H–91–0329, ultimately was dismissed with prejudice on McQueen's FOIA claim. *McQueen v. United States,* 179 F.R.D. 522, 533 (S.D.Tex.1998) (Cobb, J. sitting by designation, *aff'd without opinion,* 176 F.3d 478 (5th Cir.1999), *cert. denied,* 528 U.S. 823, 120 S.Ct. 71, 145 L.Ed.2d 60 (1999)).

"McQueen IV": McQueen sued IRS agents, an Assistant United States Attorney, and the United States, seeking damages of nearly $8 million as a result of alleged information sharing between the federal grand jury and a parallel state investigation of evasion of motor fuels taxes, based upon alleged Fed.R.Crim.P. 6(e) violations, and a claim against the United States for alleged prohibited disclosure of taxpayer's federal tax return information under 26 U.S.C. § 6103. This was docketed as Civil Action No. H–95–1453, and dismissed with prejudice on summary judgment. *McQueen v. United States,* 5 F.Supp.2d 473, 489 (S.D.Tex.1998) (Cobb, J. sitting by designation), *aff'd without opinion,* 176 F.3d 478 (5th Cir.1999), *cert. denied,* 528 U.S. 823, 120 S.Ct. 71, 145 L.Ed.2d 60 (1999).[2]

In Judge Cobb's final opinion, which in 1998 disposed of *McQueen III,* he wrote hopefully that "[t]his ruling should end the oppressive seven-year litigation war that McQueen and his lawyer have waged against nearly everyone connected with McQueen's criminal prosecution."

*McQueen v. United States,* 179 F.R.D. 522, at 525. Alas, it was not to be, and now, at least a dozen years after the war began, the long, hoary history must again be recounted.

In early 1987, the Internal Revenue Service (IRS)'s Criminal Investigation Division (CID) opened an information-gathering project to inquire generally into possible industry wide evasions of motor fuels tax. During the project, the IRS gathered information about Plaintiff McQueen and, in June 1988, opened an administrative investigation of McQueen for possible criminal tax evasion. The Federal Bureau of Investigation (FBI) and the Texas State Comptroller's Office were also involved in inquiries into possible evasions of motor fuels taxes and they, along with the IRS, attempted to coordinate their efforts in what they called a "Task Force."

McQueen was indicted by a federal grand jury in the Southern District of Texas, in July, 1992, charging twenty-four (24) counts of diesel fuel tax evasion. He pled guilty to two counts, and to a separate Criminal Information charging one count of conspiracy to impede the collection of diesel fuel excise taxes. Judge Melinda Harmon sentenced him to sixty (60) months in prison. In *McQueen IV,* McQueen sought damages from IRS Agents Susie Wong and Mark Hughes, and United States Magistrate Judge Nancy K. Pecht[3] for alleged contempt of court for the wrongful disclosure of grand jury documents in violation of Fed.R.Crim.P. 6(e), and for damages from the United States pursuant to 26 U.S.C. § 7431 (civil damages for unauthorized disclosure of return information protected by 26 U.S.C.

---

**2.** *McQueen III* and *McQueen IV* were consolidated on appeal in the Fifth Circuit.

**3.** Judge Nancy K. Pecht, now Johnson, was an Assistant United States Attorney assigned

to the Houston Division of the United States Attorney's Office for the Southern District of Texas when McQueen was prosecuted.

§ 6103). In *McQueen III*, he sought to compel the Department of Justice (DOJ) to release documents requested under the Freedom of Information Act (FOIA), 5 U.S.C. § 552.

*McQueen IV* was dismissed on motions for summary judgment by Memorandum Opinion and Order dated March 30, 1998. *See McQueen v. United States*, 5 F.Supp.2d 473 (S.D.Tex.1998) (Cobb, J.). *McQueen III*, which alleged the FOIA count against the DOJ, was dismissed on motion for summary judgment by Memorandum Opinion and Order dated May 6, 1998. *See McQueen v. United States*, 179 F.R.D. 522 (S.D.Tex.1998) (Cobb, J.).

The cases were consolidated on appeal, affirmed without opinion by the Fifth Circuit Court of Appeals, *see McQueen v. United States*, 176 F.3d 478 (5th Cir.1999), and McQueen's petition for writ of certiorari was denied. *See McQueen v. United States*, 528 U.S. 1013, 120 S.Ct. 520, 145 L.Ed.2d 401 (1999).

McQueen in this his fifth civil action alleges *Bivens* claims against Defendants Wong, Hughes, Crispin Smith, Stuart Gibson, and Angelo Frattarelli (collectively "Individual Defendants") claiming that they either gave false testimony in *McQueen IV* and/or conspired to give such testimony and withhold documents in violation of McQueen's constitutional rights. In addition, McQueen alleges that he recently learned that the IRS, on April 19, 1988, had disclosed his tax return information to the FBI in violation of 26 U.S.C. § 6103, thereby giving rise to a civil action for damages against Defendant United States under 26 U.S.C. § 7431(a). Finally, McQueen alleges that Defendants Depart-

ment of Justice–Tax Division (DOJ Tax), Department of Justice–Criminal Division (Criminal Division), FBI, IRS, Executive Office of the United States Attorney (EOUSA), and the Office of Professional Responsibility (OPR) wrongfully withheld agency records in violation of FOIA.

Defendants have filed the following motions, which are all opposed by McQueen: Individual Defendants' Motion to Dismiss or for Summary Judgment(Document No. 10);[4] Defendant United States's Motion for Summary Judgment (Document No. 17); Individual Defendants' Supplemental Motion for Summary Judgment (Document No. 25);[5] Joint Motion for Summary Judgment of the United States Department of Treasury and Department of Justice, Tax Division (Document No. 31); and Federal Defendants' Motion for Summary Judgment on Behalf of FBI, EOUSA, OPR, and Criminal Division, Department of Justice (DOJ) on FOIA Issues (Document No. 34).

## II. *Summary Judgment Standard of Review*

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show

---

**4.** This motion is treated as a motion for summary judgment because matters outside the pleadings were submitted. *See* FED. R. CIV. P. 12(b).

**5.** Because the Court grants summary judgment on issues raised in Individual Defendants' Motion to Dismiss or for Summary Judgment, this Supplemental Motion (Document No. 25) is DENIED as MOOT.

that summary judgment should not be granted. *See id.* at 2553–54. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986)). "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Id.*

In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden. *See Anderson,* 106 S.Ct. at 2513–14, 106 S.Ct. 2505. All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. *Kelley v. Price–Macemon, Inc.,* 992 F.2d 1408, 1413 (5th Cir.1993) (citing *Matsushita,* 106 S.Ct. at 1351, 106 S.Ct. 1348). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Id.* (citing *Anderson,* 106 S.Ct. at 2511). Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson,* 106 S.Ct. at 2513.

### III. *Discussion*

#### A. *Defendant United States's Motion for Summary Judgment*

Title 26 U.S.C. § 7431(a) creates a right of action against the United States if a federal employee or official knowingly or negligently violates the confidentiality provisions of 26 U.S.C. § 6103. Section 6103 states in relevant part:

> Returns and return information shall be confidential, and except as authorized by [the Internal Revenue Code], no officer or employee of the United States … shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise under the provisions of this section.

26 U.S.C. § 6103. Title 26 U.S.C. § 7431(d) provides a limited waiver of sovereign immunity for suits seeking damages for the wrongful disclosure of tax information under section 6103. Such claims can be brought "at any time within 2 years after the date of discovery by the plaintiff of the unauthorized disclosure." 26 U.S.C. § 7431(d). As with all waivers of sovereign immunity, conditions on the waiver-such as a statute of limitations-must be construed strictly in favor of the sovereign. *See Block v. North Dakota,* 461 U.S. 273, 103 S.Ct. 1811, 1820, 75 L.Ed.2d 840 (1983).

McQueen alleges that he timely filed this action pursuant to the discovery clause of section 7431(d) in that he did not have actual knowledge of the alleged disclosure violation until November 8, 1999, when he claims to have discovered such in a memorandum produced by the FBI in response to McQueen's FOIA inquiries.

■ The date of discovery, under § 7431(d), is when one knows or should have known of the claim. *See Wood v. Commonwealth of Va.,* 155 F.3d 564, 1998 WL 414019, *2, 1998 U.S.App. LEXIS 16904, *7 (4th Cir. July 23, 1998) (action accrued when the plaintiff learned of possi-

bility of wrongful disclosure); *Amcor Capital Corp. v. United States,* No. CV 94–6814(GHKx), 1995 WL 515690, at *2 (C.D.Cal. June 13, 1995), *aff'd on other grounds,* 106 F.3d 406, 1997 WL 22248 (9th Cir.1997) (Under section 7431(d), the limitations period "begins to run from the date upon which the plaintiff knows or should have known of the subject injury."); *cf. J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.,* 76 F.3d 1245, 1253 (1st Cir.1996) (applying objective "know or should have known" standard to term "discovery" in ERISA statute of limitations, 29 U.S.C. § 1113); *Tregenza v. Great Am. Communications Co.,* 12 F.3d 717, 722 (7th Cir.1993) (interpreting "discovery" rule in Section 9(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78i(e), to include inquiry or constructive notice).

█ McQueen knew of this claim at least as early as 1995 when he filed *McQueen IV.*[6] In that complaint, McQueen specifically alleged that "on several and perhaps many occasions," IRS agents "disclosed return information of McQueen to ... agents of the FBI and the Comptroller in violation of Section 6103 of the Internal Revenue Code of 1986." Complaint in CV95–1483, at 9. McQueen is therefore asserting not only a claim of unlawful disclosure under § 6103 that he knew about more than two years before filing *this* case, he is also asserting the *same claim* of unlawful disclosure under § 6103 that he actually filed *six years* before he filed the present case. The claim is therefore barred by the two-year statute of limitations. *See* 26 U.S.C. § 7431(d).

McQueen's previous § 6103 claim against the United States was dismissed on the merits with prejudice in *McQueen*

*IV* ("McQueen's § 6103(h) claim shall be dismissed with prejudice.") and McQueen's present § 6103 claim arising out of the same nucleus of operative facts is therefore also barred by the doctrine of res judicata. The purpose behind the doctrine is that a "full and fair opportunity to litigate protects [a party's] adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979). When a court of competent jurisdiction renders a decision on the merits, the judgment is final "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Nevada v. United States,* 463 U.S. 110, 103 S.Ct. 2906, 2918, 77 L.Ed.2d 509 (1983).

█ McQueen argues that this Court should recognize an equitable exception to the doctrine of res judicata: "shot through the resolution of a res judicata claim is the concept of fairness." Document No. 20, at 17. However, as the First Circuit noted in *United States v. Cunan,* "[t]he Supreme Court's decision in *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, [101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)] dooms to failure any attempt to avoid application of the claim preclusion doctrine on the grounds that such application in a particular case is unfair, unjust, or unduly harsh." 156 F.3d 110, 119 (1st Cir.1998) (quoting 18 MOORE's FEDERAL PRACTICE § 131.24[6] (3d ed.1998)); *accord Matter of Teal,* 16 F.3d 619, 622 n. 6 (5th Cir.1994) (noting

---

**6.** In *McQueen IV,* Judge Cobb found that McQueen's § 6103(h) action was already time barred when he filed it in 1995. *McQueen v.*

*United States,* 5 F.Supp.2d 473, 489 (S.D.Tex. 1998).

the "well-known rule that a federal *court may* not abrogate principles of res judicata out of equitable concerns") (citing *Moitie*, 101 S.Ct. at 2429). The Fifth Circuit has likewise recognized that "there is no general equitable exception to the [res judicata] doctrine." *Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1029 (5th Cir. Unit B 1982). Accordingly, the United States is entitled to summary judgment on McQueen's § 6103 claim.

**B.** *Individual Defendants' Motion to Dismiss or For Summary Judgment*

■ Individual Defendants Wong, Hughes and Smith, assert that they are absolutely immune from damages liability based on their testimony in *McQueen IV*, and cite *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) in support of their argument. In *Briscoe v. LaHue*, the Supreme Court held that a convicted criminal defendant could not recover damages under 42 U.S.C. § 1983 against a police officer who gave perjured testimony at the defendant's criminal trial. 103 S.Ct. at 1121. The Court examined the absolute immunity protecting witnesses at common law and found that § 1983 did not abrogate this immunity. *Id.* at 1113–15. In addition, the Court stressed that police officers acting as government witnesses performed the same function as private witnesses. *Id.* at 1119. Furthermore, the Court noted that although performing different functions than judges and prosecutors, witnesses are integral parts of the judicial process and, therefore, enjoy absolute immunity to suits brought under § 1983, even for perjured testimony. *Id.* at 1121. This immunity also applies to witnesses giving testimony under declarations. *See Sykes v. James*, 13 F.3d 515, 521 (2d. Cir.1993); *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir.1989).

McQueen argues that *Briscoe* does not control because his *Bivens* action is a constitutional remedy, not a statutory action under 42 U.S.C. § 1983. Hence, whereas "congressional intent" was a consideration in *Briscoe*, there is no such consideration in a *Bivens* action. Regardless, McQueen argues that witness immunity should not apply to a "broad ranging conspiracy among 5 people to testify falsely and withhold documents that would have shown their testimony to be false." *See* Document No. 14, at 14.

In *Charles v. Wade*, 665 F.2d 661, 666 (5th Cir. Unit B 1982), a pre-*Briscoe* case, it was held that witnesses have absolute immunity from *Bivens* actions as well as from liability under § 1983. The court stated "[a] majority of federal appeals courts to consider the question have held that the policies that underlie the common law rule of absolute witness immunity apply with equal force in a section 1983 action or its counterpart, a *Bivens*-type claim ... [w]e agree with the majority position." (internal citations omitted). *Id. See also Briggs v. Goodwin*, 712 F.2d 1444, 1449 n. 33 (D.C.Cir.1983) ("The Supreme Court has noted ... that 'it would be untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials.'") (citing *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978)). Indeed, given that Congress intended not to abrogate traditional witness immunity when it enacted § 1983, as the Supreme Court held in *Briscoe*, it would be absurd for this District Court to declare that traditional witness immunity is abrogated in *Bivens* actions.

Further, McQueen's argument that absolute immunity should not apply to witnesses who allegedly conspire to give false

testimony was rejected in *Mowbray v. Cameron County, Tex.*, 274 F.3d 269, 277 (5th Cir.2001):

> [A]lthough witnesses are entitled to absolute immunity against section 1983 suits based on their testimony in a criminal trial, it is less certain whether the rule of *Briscoe* extends to claims that a witness entered a pre-trial conspiracy to commit perjury. Of the eight circuits that have addressed the issue, seven have extended absolute witness immunity. The Second Circuit stands alone in reaching a contrary conclusion. We find the reasoning of the majority of circuits persuasive. As a matter of logic, "[a] person may not be prosecuted for conspiring to commit an act that he may perform with impunity."(quoting *House v. Belford*, 956 F.2d 711, 720 (7th Cir. 1992)).

*Id.* (internal citations omitted). *Briscoe, Wade,* and *Mowbray* therefore compel the conclusion that Individual Defendants Wong, Smith and Hughes are absolutely immune from a *Bivens* suit based on their alleged false testimony or alleged conspiracy to testify falsely in *McQueen IV.*

■ McQueen also accuses Individual Defendants Gibson and Frattarelli, in their roles as defense counsel in *McQueen IV*, of assisting Individual Defendants Wong, Hughes and Smith in making false or misleading testimony and of withholding documents and information regarding the IRS's alleged violation of section 6103. Individual Defendants Gibson and Frattarelli, citing *Butz,* among others, claim that they are entitled to absolute immunity because their actions were taken solely in their performance of the advocacy function in defending the United States in McQueen's lawsuits. McQueen counters that the principle articulated in *Butz* and later cases does not apply because the attorneys were representing the private interests of Individual Defendants Wong and Hughes at the same time they represented the United States.

*Butz* arose out of a federal administrative proceeding in the U.S. Department of Agriculture. The complainant sued officials and attorneys in the Department for damages arising out of their alleged misconduct. The Supreme Court stated, "We think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suit for damages." 98 S.Ct. at 2914. The Court likened the function of agency attorneys to that of a prosecutor and held that they were absolutely immune. *Id.* at 2916.

The principles outlined in *Butz* have been applied to afford absolute immunity to government attorneys who initiate or participate in a variety of civil proceedings. *See, e.g., Barrett v. United States*, 798 F.2d 565, 572 (2d. Cir.1986) (assistant attorney general defending wrongful death action entitled to absolute immunity from claims that he concealed facts regarding the federal government's involvement in the death because the attorney's activities were closely associated with the judicial process: "to make the immunity accorded a government attorney in the conduct of litigation on its behalf turn on whether the lawyer acts in the capacity of counsel for 'plaintiff' or 'defendant' at any given moment in the proceedings would tend to allow form to triumph over substance."); *Fry v. Melaragno*, 939 F.2d 832, 837 (9th Cir.1991) ("[T]he principles outlined in *Butz* should a fortiori apply to the government attorney's initiation and handling of civil litigation in a state or federal court. Whether the government attorney is representing the plaintiff or the defendant, or is conducting a civil trial, criminal prosecution or an agency hearing, absolute immunity is 'necessary to assure that ... advocates ... can perform their respective

functions without harassment or intimidation' .... If the government attorney is performing acts 'intimately associated with the judicial phase' of the litigation, that attorney is entitled to absolute immunity from damage liability.") (internal citations omitted); *Ellison v. Stephens*, 581 F.2d 584, 585 (6th Cir.1978) ("[T]he imposition of a legal defense, whether valid or not, is unquestionably 'an integral part of the judicial process' and may not be the basis of a civil rights action ... for such conduct."); *see also, Robinson v. Volkswagenwerk AG*, 940 F.2d 1369, 1372–73 (10th Cir.1991); *Auriemma v. Montgomery*, 860 F.2d 273, 276–77 (7th Cir.1988), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989).

Defendants Gibson and Frattarelli were Justice Department attorneys assigned to defend government employees Wong and Hughes, who were named defendants in *McQueen IV*, and as such, they are immune from McQueen's *Bivens* claims. Their legal defense of Wong and Hughes was an integral part of the judicial process in *McQueen IV* and their assigned function as government lawyers was to represent Wong and Hughes-no less so than the function of agency attorneys "presenting evidence in an agency hearing and the function of the prosecutor who brings evidence before the court." *Butz*, 98 S.Ct. at 2916; *see also Barrett*, 798 F.2d at 572–73; *Fry*, 939 F.2d at 837; *Ellison*, 581 F.2d at 585. Accordingly, the Individual Defendants are entitled to summary judgment.

C. *Joint Motion for Summary Judgment of the United States Department of Treasury and Department of Justice, Tax Division*

1. *McQueen's FOIA Request to DOJ Tax Dated April 5, 1993*

(a) Collateral Estoppel

First, DOJ Tax argues that McQueen is collaterally estopped from contesting the application of four of the asserted FOIA exemptions because they were previously adjudicated in *McQueen III*. On January 12, 1990, McQueen made similar FOIA requests to DOJ Tax, which, like his April 5, 1993 requests presently under review, also sought information related to his criminal and grand jury investigations. Though different documents are at issue in this case, DOJ Tax argues that they nonetheless involve exactly the same types of documents prepared by the same IRS agents, for the same time periods, as part of the same investigation that were at issue in *McQueen III*. Accordingly, DOJ Tax argues that McQueen is collaterally estopped from challenging the application of the four FOIA exemptions.

■ Collateral estoppel applies "[w]hen an issue of fact *or law* is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment ... whether on the same or a different claim." *Nat'l Treasury Employees Union v. Internal Revenue Serv.*, 765 F.2d 1174, 1176 (D.C.Cir.1985). DOJ Tax argues that the court in *National Treasury* held that collateral estoppel applies to adjudicated FOIA exemptions involving the same kinds of documents but for different years. However, in *National Treasury* the parties stipulated that the information redacted by the governmental agency in that case was the "same kind" of information ordered deleted in the earlier suit. *See id.* at 1177 n. 7. There is no stipulation in this case.

■ Instead, McQueen insists that his April 5, 1993, requests are quite different from the 1990 requests. The Court finds that some are and some are not. A few of the requests are essentially identical (although worded differently), but many of

the April 5, 1993, requests are different from those made in 1990. *See, e.g.,* Document 35 ex. A, at 6–8. Although McQueen is collaterally estopped as to a number of documents responsive to requests for which four FOIA exemptions were upheld in *McQueen III,* there are a number of other requests for information that may not be essentially identical. Accordingly, a full analysis will be made.

### (b) FOIA Exemptions Generally

 Access to records responsive to a FOIA request may be withheld to the extent the records come within one of FOIA's nine statutory exemptions. 5 U.S.C. §§ 552(b)(1)-(9). A district court reviews an agency's exemption claims de novo. 5 U.S.C. § 552(a)(4)(B). The burden of proof is on the agency to establish the exemption. *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 109 S.Ct. 1468, 1472, 103 L.Ed.2d 774 (1989). An agency may sustain its burden through the submission of detailed affidavits that identify the documents at issue and explain why they fall under the claimed exemptions. *Cooper Cameron Corp. v. U.S. Dep't of Labor,* 280 F.3d 539, 543 (5th Cir.2002). Summary judgment may be granted solely on the basis of these affidavits if they are clear, specific, reasonably detailed, and describe the withheld information in a factual and nonconclusory manner. *Id.; see also Matter of Wade,* 969 F.2d 241, 246 (7th Cir. 1992) ("Without evidence of bad faith, the veracity of the government's submissions regarding reasons for withholding the documents should not be questioned."); *Hemenway v. Hughes,* 601 F.Supp. 1002, 1004 (D.D.C.1985) (in FOIA cases, summary judgment does not hinge on the existence of a genuine issue of material fact, but rather on the basis of agency affidavits if they are reasonably specific, demonstrate logical use of exemptions, and are not controverted by evidence in record or bad faith.).

### (c) FOIA Exemption (b)(3)

Exemption 3 of FOIA, 5 U.S.C. § 552(b)(3), in pertinent part, permits withholding of records that are specifically exempted from disclosure by statute if the statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." DOJ Tax asserts this exemption as to documents required to be withheld by Fed. R.Crim.P. 6(e) and 26 U.S.C. § 6103. *See Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.,* 656 F.2d 856, 867–68 (D.C.Cir.1981) (deeming Fed.R.Crim.P. 6(e) as a FOIA (b)(3) exempting statute); *Linsteadt v. Internal Revenue Serv.,* 729 F.2d 998 (5th Cir.1984) (deeming 26 U.S.C. § 6103 as a FOIA (b)(3) exempting statute).

Fed.R.Crim.P. 6(e) protects from disclosure all matters occurring before a grand jury. The rule embodies a broad sweeping policy of preserving the secrecy of grand jury material, regardless of the substance in which the material is contained. *Iglesias v. Cent. Intelligence Agency,* 525 F.Supp. 547, 556 (D.D.C.1981). Grand jury information is protected from disclosure even after the investigation has been concluded, and the criminal defendant convicted. *See, e.g., McQueen III,* 179 F.R.D. at 529–530 (upholding the DOJ's (b)(3) exemption claim under Fed.R.Crim.P. 6(e) after McQueen had been convicted of tax evasion and sentenced).

 The D.C. Circuit has held that the broad reach of Rule 6(e) protects not only documents and other "hard evidence" presented to the grand jury, but that it also covers such information as witness identities and the substance of testimony:

[Rule 6(e)] encompasses not only the direct revelation of grand jury transcripts but also the disclosure of information which would reveal "the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors, and the like." *Fund for Constitutional Gov't,* 656 F.2d at 869 (quoting *Sec. Exch. Comm. v. Dresser Indus.,* 628 F.2d 1368, 1382 (D.C.Cir. 1980)), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). However, the agency asserting the exemption for Rule 6(e) material must provide "some affirmative demonstration of a nexus between disclosure and revelation of a protected aspect of the grand jury's investigation." *Senate of the Com. of Puerto Rico v. U.S. Dep't of Justice,* 823 F.2d 574, 584 (D.C.Cir.1987).

 According to DOJ Tax's affidavit of Brian J. Ferrel ("Ferrel"), offered in support of the motion:

Continued secrecy of the names of the grand jury witnesses safeguards them from possible retaliation and encourages other witnesses to testify before future grand juries. The grand jury and prosecution recommendations refer to or summarize testimony of grand jury witnesses or evidence presented to the grand jury. Release of material from these documents would therefore reveal not only the scope and direction of the grand jury's investigation, but identify and describe the specific evidence considered by the grand jury.

Document No. 35, at 14. After a painstaking review of the "Index of Withheld Documents," Document No. 35 ex. U, the Court finds that DOJ Tax properly redacted or withheld documents 17, 46, 48, 60, 63, 66, 67, 68, 79, 84, 85, 90, 92, 94, 113, 153, 163, and 165 under exemption (b)(3), in conjunction with Rule 6(e), as necessary to protect the identities of grand jury targets and witnesses, and to prevent revelation of the scope and direction of the grand jury's investigation.[7] *See Fund for Constitutional Gov't,* 656 F.2d at 869 (quoting *Sec. Exch. Comm. v. Dresser Indus.,* 628 F.2d 1368, 1382 (D.C.Cir.1980), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980)). Furthermore, the Court is satisfied that a nexus exists between disclosure of the documents and the revelation of a protected aspect of the grand jury's investigation, as required by *Commonwealth of P.R.*[8]

---

**7.** The "Index of Withheld Documents" serves as a so-called *Vaughn* index, an intermediate approach to in camera review requiring from the withholding agency an index and detailed justification for its claim. *Vaughn v. Rosen,* 484 F.2d 820, 825, 826–28 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). Although "there is no set formula for a *Vaughn* index[,] ... the least that is required, is that the requestor and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." *Hinton v. Dep't of Justice,* 844 F.2d 126, 129 (3d Cir.1988) (citations omitted). *Cf. Keys v. U.S. Dep't of Justice,* 830 F.2d 337, 349 (D.C.Cir.1987) (holding governmental agency's *Vaughn* index was sufficient where it submitted declarations that "describe[d] in detail the contexts in which all the documents were collected[,]" and contained "a copy of every document, in redacted form, that appellant received ... and two lengthy affidavits discussing the redactions."). "Such flexibility is consistent with the purposes of [FOIA] and the role of the trial court in such actions." *Stephenson v. Internal Revenue Serv.,* 629 F.2d 1140, 1145 (5th Cir.1980). Resort to in camera review is discretionary ... as is resort to a *Vaughn* index." *Id.* (internal citations omitted). DOJ Tax's "Index of Withheld Documents" constitutes a proper *Vaughn* index.

**8.** Additionally, McQueen argues that the Court's finding in *McQueen III*-that the grand jury investigation of McQueen commenced on or after July 15, 1988–"should be collateral

Under 26 U.S.C. § 6103, tax return information is confidential and may not be disclosed except as authorized by the statute. *See Linsteadt,* 729 F.2d at 998. "Return information" is broadly defined under the statute and includes a taxpayer's identifying information, tax liabilities, and whether his/her return will be examined or subject to other investigation or processing. 26 U.S.C. § 6103(b)(2).

According to Ferrell's affidavit for DOJ Tax, "[t]he information in the withheld and redacted documents reflects confidential tax return information of third-parties who have not provided written consent to the disclosure of their return information." Document No. 35, at 12. The identity of third party taxpayers is clearly exempt under § 6103.. *See DeSalvo v. Internal Revenue Serv.,* 861 F.2d 1217, 1222 (10th Cir.1988) (a taxpayer's identity is unambiguously within the scope of return information). A third person must give signed consent before his/her return information can be disclosed. 26 U.S.C. § 6103(c). Even if consent were given, an agency can refuse disclosure if it determines that "such disclosure would seriously impair Federal tax administration." *Id.* Moreover, "[r]emoval of identification from return information does not deprive it of protection under § 6103(b)." *Rollins v. Dep't of Justice,* No. H–90–3170, 1992 U.S. Dist. LEXIS 10884, at *17 (S.D. Tex. June 30, 1992) (Harmon, J.) (citing *Church of*

*Scientology of Cal. v. Internal Revenue Serv.,* 484 U.S. 9, 108 S.Ct. 271, 272–74, 98 L.Ed.2d 228 (1987)).[9]

Ferrel states in his affidavit that the withheld documents "discuss specifics regarding the nature of the IRS case against these third parties and data relating to the presence of tax liabilities or offenses." Document No. 35, at 12–13. Release of the documents would "seriously impair Federal tax administration" because it would reveal the Government's case against the third parties prematurely and effectively thwart the IRS's duty to enforce the revenue laws and collect taxes from these third parties. Accordingly, and after further detailed review of the "Index of Withheld Documents," Document No. 35 ex. U, the Court finds that DOJ Tax properly redacted or withheld documents 17, 54, 59, 60, 63, 65, 66, 68, 71–74, 79–82, 84–86, 89–92, 94, 101, 102, 153, 163 and 165 under exemption (b)(3), in conjunction with § 6103. *Linsteadt,* 729 F.2d at 998; *Currie v. Internal Revenue Serv.,* 704 F.2d 523, 532 (11th Cir.1983); *Chamberlain v. Kurtz,* 589 F.2d 827, 840–41 (5th Cir.), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979).

### (d) FOIA Exemption (b)(5)

FOIA exception (b)(5) protects from disclosure "inter-agency or intra-agency memorandums or letters which would not

---

estoppel against the Government's asserting the contrary in this case" and that "all of the pre-July 15, 1988 information thus should be disclosable to McQueen free of exemption based on Rule 6(e)." Document No. 37, at 13. That is not required to be determined because all of DOJ Tax documents for which Rule 6(e) exemptions are asserted are dated *after* July 15, 1988, *i.e.,* after the grand jury investigation began.

9. In response, McQueen argues that " § 6103 does not prohibit disclosure to McQueen of his tax return information," so "[w]hen third

party tax return information is used in any way for another's tax determinations or investigations, it necessarily becomes the tax return information of the other taxpayer." Document No. 37, at 12. McQueen has no authority for this contention other than the *ipse dixit* of his own attorney, Mr. Townsend, who cites an article that he himself wrote. *Id.* at 12 n. 18. This conforms to Mr. Townsend's advocacy traits that were observed by Judge Cobb five years ago. *See McQueen IV,* 5 F.Supp.2d at 479 n. 8.

be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Included within exemption (b)(5) and at issue in this case are records protected by the attorney work-product and the deliberative process privileges. *See Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.,* 421 U.S. 132, 95 S.Ct. 1504, 1515–16, 1518, 44 L.Ed.2d 29 (1975).

 The attorney work-product privilege attaches to documents and other memoranda prepared by an attorney in contemplation of litigation. *See Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947). So long as specific claims have been identified that make litigation probable, a suit need not be filed for the privilege to apply. *See Kent Corp. v. Nat'l Labor Relations Bd.,* 530 F.2d 612, 623 (5th Cir.), *cert. denied,* 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976). This privilege grants wide protection to documents that are normally privileged in civil discovery. Thus, the "test under Exemption 5 is whether documents would be 'routinely' or 'normally' disclosed upon a showing of relevance." *Fed. Trade Comm'n v. Grolier Inc.,* 462 U.S. 19, 103 S.Ct. 2209, 2214, 76 L.Ed.2d 387 (1983) (citing *Sears, Roebuck & Co.,* 95 S.Ct. at 1515). Under Fed.R.Civ.P. 26(b)(3), a party is able to discover work product "only upon a showing that the party seeking discovery has substantial need of the materials . . . and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." FED. R. CIV. P. 26(b)(3). The attorney-work product privilege under Exemption 5 also protects material that is largely or entirely factual. *See United States v. Weber Aircraft Corp.,* 465 U.S. 792, 104 S.Ct. 1488, 1493 n. 17, 79 L.Ed.2d 814 (1984).

 According to Ferrel:

First, the grand jury recommendations and the prosecution recommendations of the IRS attorneys, and the Tax Division prosecution memoranda, review notes, and letters and memoranda concerning handling the case were all generated in anticipation of criminal litigation against the subjects of the investigation or in pending litigation. Grand jury investigations are part of the litigation process, were ongoing throughout this case, and led to indictments, prosecutions and guilty pleas. Second, they were all prepared by attorneys to aid in the determination whether to authorize prosecution of the targets of the investigation. As the memoranda flow up from the IRS to the ultimate decision-makers in the Tax Division, different attorneys had different opinions regarding the theory of prosecution and the strength of the government's case.

Document No. 35, at 14–15. After reviewing the "Index of Withheld Documents," Document No. 35 ex. U, the Court finds that documents 42, 44 (civil), 59, 63–65, 69, 73, 79, 81, 84–86, 92, 94, 106, 113, 115, 118, 123, 124, 153, and 155 include information that IRS and DOJ attorneys prepared in anticipation of McQueen's criminal prosecutions. Accordingly, they have been properly withheld or redacted because factual material analyzed by these attorneys, as well as their opinions and recommendations regarding the merits of the case, its prosecution, and related decisions, are protected by the work-product doctrine. *See Firestone Tire and Rubber Co. v. Dep't of Justice,* No. 80–2616, 1981 WL 1870, at *2 (D.D.C.1981) (noting that disclosure of similar attorney-prepared memoranda "would unquestionably chill the kind of frank prosecutorial evaluations of tax cases in the future that these memoranda evince.").

■ The purposes of the deliberative process privilege are (1) to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; (2) to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and (3) to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action that were not in fact the ultimate reasons for the agency's action. *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980) (numbers added).

The Fifth Circuit has held that under *Sears, Roebuck & Co.,* a document explaining the disposition of informal or routine matters can be exempt from disclosure, and that only documents that explain the formal adjudication of matters committed to the agency are the type of final opinions that must be disclosed. *Skelton v. U.S. Postal Serv.,* 678 F.2d 35, 40–41 (5th Cir. 1982). To come within the deliberative process privilege under Exemption (b)(5), a document must be a direct part of the pre-decisional process, in that it "makes recommendations or expresses opinions on legal or policy matters" to be decided by the agency, *Jordan v. U.S. Dep't of Justice,* 591 F.2d 753, 774 (D.C.Cir.1978) (*en banc*), and the communication within it must also be deliberative, *Vaughn v. Rosen,* 523 F.2d 1136, 1144 (D.C.Cir.1975).

■ According to Ferrel:
IRS agents, serving as grand jury agents, will develop evidence and make recommendations on specific prosecutions to IRS regional or district counsel. These counsel, who lack authority to initiate prosecutions, in turn, make specific prosecution recommendations to the Tax Division. Line attorneys in the Tax Division review the reports and recommendations previously generated in complex tax cases, such as this one. Following his/her analysis and sometimes a taxpayer conference, the line attorney, who lacks the authority to initiate prosecutions, makes a prosecution recommendation. This recommendation is then reviewed by senior or supervisory attorneys in the Tax Division.

Document No. 35, at 17.

The summary judgment evidence shows that DOJ Tax has released the final decisions regarding prosecution of McQueen that were made by a Deputy Assistant Attorney General and the Assistant Attorney General for the Tax Division. The documents that assisted in making those final determinations were pre-decisional and deliberative because they were prepared by IRS agents and line attorneys, both of whom lack the authority to make the final agency decision for a senior person in the decision-making hierarchy. Accordingly, and after reviewing the "Index of Withheld Documents," Document No. 35 ex. U, the Court finds that documents 42, 59, 63–65, 69, 73, 79, 81, 84–86, 92, 94, 106, 113, 115, 118, 123, 124, 153, and 155 were properly withheld or redacted as protected by the deliberative process privilege under Exemption (b)(5).

(e) FOIA Exemption (b)(7)(C)

■ DOJ Tax also asserts FOIA exemption (b)(7)(C), which exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The Fifth Circuit has created a three-part test for application of the exemption:

The first step is to identify and evaluate the specific privacy interests implicated by the information encompassed by the disclosure request. Conversely, the next step is to identify and evaluate the particular public interests that may be served-or disserved-by disclosure of the information. Only after first examining each interest do we perform the actual weighing of the interests for and against disclosure.

*Halloran v. Veterans Admin.*, 874 F.2d 315, 319 (5th Cir.1989) (internal citations omitted).

According to Ferrel:

[DOJ Tax] withheld the identities of certain individuals who testified before the grand jury as well as identities and identifying information of persons who provided information of law enforcement agencies, including confidential informants or persons who cooperated with the investigations.

Document No. 35, at 18. These documents are "compiled for law enforcement purposes" because they were created and compiled during the course of a criminal investigation and grand jury allegations into whether McQueen (and others) violated the tax laws. *See Pope v. United States*, 599 F.2d 1383, 1386 (5th Cir.1979) (investigations involving the enforcement of the Internal Revenue Code and rules promulgated thereunder constitute "law enforcement purposes" under FOIA exemption (7)). *Cf. Cooper Cameron Corp.*, 280 F.3d at 546 (In order to show that the records were compiled for law enforcement purposes, "OSHA need only show that it *actually* assembled the requested records for a law-enforcement purpose, that is, in a focused inquiry on specific violations of the law.").

The privacy interests asserted in this case are to avoid embarrassment, annoy-ance and harassment. Specifically, Ferrel avers:

[T]here is a reasonable likelihood of harassment and retaliation against these people. For over ten years, Plaintiff and his attorney have made repeated allegations of impropriety against IRS agents, Assistant United States Attorneys, and Department of Justice Attorneys which they have had to respond to in several forums.

As noted by Judge Cobb in *McQueen IV*, "in subsequent civil proceedings, McQueen and his lawyer John Townsend (Townsend), have engaged in an oppressive litigation war against almost everyone connected with McQueen's criminal prosecution." *McQueen IV*, 5 F.Supp.2d at 473. McQueen's prior conduct and statements make even more likely the risk of serious retaliation.

Indeed, at McQueen's criminal detention hearing held July 17, 1992, Magistrate Judge Botley received testimony from several witnesses who had heard McQueen on various occasions declare in their presence that he could have persons injured or killed by making a phone call, that he knew a person in Mexico who would "kill anyone who messed with him," and that he could have someone "knocked off for Five Thousand Dollars ($5,000.00) and that it wasn't a hard thing to do." Order of Detention Pending Trial, 2, Crim. Action H–92–155, entered July 20, 1992 (Botley, M.J.). Judge Botley recounted a great amount of additional evidence related to McQueen's criminal history and involvement, and found there was a "serious risk that Alvy T. McQueen may thereafter, injure, intimidate, or otherwise cause bodily injury or death to witnesses if released." *Id.* 3. These included some who testified before the grand jury. Further, Judge Botley concluded that "there is serious reason to believe under [18 U.S.C.

3142(b) ] that McQueen has the ability and may obstruct justice, that he has threatened to injure, intimidate witnesses, and that he is a danger to at least those witnesses." Document No. 35, ex. D, at 18. As a result, McQueen was ordered detained, *id.* at 20, which order was affirmed by United States District Judge Melinda Harmon by Order entered September 9, 1992.

McQueen argues that Judge Botley made his findings in a detention hearing over ten (10) years ago, and that there "is and has been no finding that McQueen would have a motive sufficient to create a reasonable prospect of harm after he has been convicted and served his sentence and has no motive to put himself in harm's way." Document No. 37, at 14–15. McQueen also claims that he has known for years the identities of the principal government agents and informants, confidential and otherwise, who participated in his investigations, and the fact that he has not harmed them indicates that the DOJ Tax's claim "has not withstood the test of time." *Id.* at 15.

Exemption (7)(C), however, requires only that the information sought to be withheld be of the sort that, if disclosed, "could *reasonably* be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) (emphasis added). Assuming McQueen does know the identities of some individuals involved in his investigation, the fact that he has not yet harmed or harassed them does not negate a reasonable likelihood that he would harm them or others in the future, especially if his suspicions were confirmed by disclosures of the actual identities of those who cooperated with the government. *See, e.g., New England Apple Council v. Donovan,* 725 F.2d 139, 142 (1st Cir.1984) (applying Exemption (7)(C) broadly to protect from disclosure the identities of non-supervisory Office of the Inspector General personnel and holding that (7)(C) is not limited to cases involving an *"actual* showing of harassment or other harm to government officials"); *Lesar v. U.S. Dep't of Justice,* 636 F.2d 472, 487 (D.C.Cir.1980) (privacy interest of FBI agents recognized where disclosure of their roles in investigating the King assassination "conceivably" could subject them to harassment); *McNamera v. U.S. Dep't of Justice,* 974 F.Supp. 946, 960 (W.D.Tex. 1997) ("Exemption (7)(C) takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity.").

Having found a privacy interest, the Court must balance that privacy interest against any countervailing public interest in disclosure of the information. In his response, McQueen identifies no genuine public interest that could be served by the disclosure of this information, and the Court has found none. There is no reasonable likelihood that the disclosure of the names and identifying information of grand jury witnesses and third-party sources of information in McQueen's tax fraud investigation would contribute anything to the public's understanding of the operations or activities of these agencies. *See Reporters Comm. for Freedom of the Press,* 109 S.Ct. at 1468 (FOIA's core purpose is nothing more than "contributing significantly to public understanding of the operations or activities of the government."). *See also U.S. Dep't of Defense v. Fed. Labor Relations Auth.,* 510 U.S. 487, 114 S.Ct. 1006, 1012–13, 127 L.Ed.2d 325 (1994)(FOIA's purpose is not advanced by disclosing information concerning private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct.). Accordingly, and after reviewing again the

"Index of Withheld Documents," Document No. 35 ex. U, the Court finds that documents 1–40, 17 (civil), 42–47, 49–52, 54, 59, 60, 63, 65–66, 68, 71–74, 78–82, 84–86, 89–92, 94, 101–02, 125, 128–151, 153, 163, 165 and 169 have been properly withheld or redacted under exemption (7)(C).

#### (f) FOIA Exemption (b)(7)(F)

█ DOJ Tax seeks to withhold identifying information of controlled informants and undercover agents participating in McQueen's criminal investigation. Exemption (7)(F) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information … could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). "Portions of documents that contain identities of law enforcement personnel are properly withheld if disclosure would endanger the life or physical safety of such individuals." *Blanton v. U.S. Dep't of Justice*, 182 F.Supp.2d 81, 86 (D.D.C.2002). "Withheld identities also may include non-law enforcement persons who assist the government in its criminal investigation …." *Id.* This exemption has been interpreted to afford "broad protection to the identities of individuals mentioned in law enforcement files." *Jimenez v. Fed. Bureau of Investigation*, 938 F.Supp. 21, 30 (D.D.C.1996).

For the same reasons discussed above with respect to FOIA exemption (b)(7)(C), and after reviewing the "Index of Withheld Documents," Document No. 35 ex. U, the Court finds that documents 54, 60, and 79 have also been properly withheld or redacted under exemption (7)(F). *See Blanton*, 182 F.Supp.2d at 87 ("The same information that is withheld under Exemption (7)(C) may be withheld under Exemption (7)(F) to protect against risk of physical injury or harassment.").

#### (g) FOIA Exemption (b)(7)(E)

█ DOJ Tax asserts FOIA exemption (7)(E) to prevent the disclosure of portions of documents 54 and 60. Exemption (7)(E) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information … would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

The "Index of Withheld Documents," Document No. 35 ex. U, describes the application of the exemption to the documents, stating that for both documents the withholdings detail how an agent was able to detect that McQueen and others were able to evade payment of federal diesel fuel excise taxes. The summary judgment evidence shows that these details, by themselves, would reveal law enforcement techniques and procedures for detecting federal diesel fuel tax evasion. For example, disclosure of this information may enable others to modify a criminal enterprise to avoid or at least to delay detection of such an evasion, in part by modifying techniques and by being more selective of whom they choose as a "player." Document No. 35 ex. U, at 62, 69. Accordingly, and after reviewing the "Index of Withheld Documents," Document No. 35 ex. U, the Court finds that documents 54 and 60, have been properly withheld or redacted under exemption (7)(E).

#### (h) FOIA Exemption (b)(7)(D)

Exemption (b)(7)(D) exempts from disclosure

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). According to Ferrel, the documents withheld or redacted under this exemption were all prepared by the IRS or contain information provided to DOJ Tax by the IRS. Document No. 35, at 21. Additionally, these documents

> all identify the source of the information as a confidential informant (CI) [and][i]n most of the documents, sent to the Tax Division, the name of the CI was removed before it was received but the substance of the information and other identifying information remained.

*Id.* McQueen argues that DOJ Tax "ignores *United States Dep't of Justice v. Landano*" because the DOJ Tax has not established that confidentiality between informants and criminal investigation agents was appropriate and expressly or necessarily agreed upon. *See* Document No. 37, at 15.

In *U.S. Dep't of Justice v. Landano,* 508 U.S. 165, 113 S.Ct. 2014, 2022–23, 124 L.Ed.2d 84 (1993), the Court rejected the government's argument that a source should be presumed confidential within the meaning of Exemption (7)(D) whenever the source provides information to the FBI in the course of a criminal investigation.

The Supreme Court emphasized that the issue under exemption (7)(D) is "not whether the requested *document* is of the type that the agency usually treats as confidential, but whether the particular *source* spoke with an understanding that the communication would remain confidential." *Id.* at 2019. Such an understanding can arise either explicitly, through the government's assurances to the source, or implicitly, through the facts or circumstances surrounding the source's statement. *Id.* at 2019–20.

Regarding explicit confidentiality, Ferrel states in his affidavit:

> I have spoken with the IRS agents who interviewed the informants. Most of these people were "scared" and would not speak to the agents without express assurances of confidentiality. These persons were told that the information they provided was confidential and that their identity would be confidential. Others were numbered informants and the documents reflect those numbers. According to the agents, this meant that these individuals were promised that the information they provided would not be used if it could be corroborated from other sources. In addition to memoranda of interviews with informants, several documents are Criminal Investigation Information Items containing handwritten letters from confidential sources who provided information and suggested investigations.

Document No. 35, at 22. Ferrel verifies that the information provided by confidential sources was either provided "pursuant to express assurances of confidentiality because most of the sources were 'scared' or under circumstances from which an assurance of confidentiality would reasonably be inferred." *Id.*

The Fifth Circuit in *Cooper Cameron Corp.* agreed with recent cases from the

D.C. Circuit that rejected conclusional assertions of obvious express confidentiality and held that "[a]t the very least the government must indicate where these assurances of confidentiality are memorialized." 280 F.3d at 551 (citing *Billington v. U.S. Dep't of Justice*, 233 F.3d 581, 585 (D.C.Cir.2000)). Ferrel's affidavit does not indicate where, if at all, these express assurances of confidentiality are located in writing. Moreover, DOJ Tax's "Index of Withheld Documents" does not reveal such and, because the withheld documents have not been produced, the Court is not able to conduct an *in camera* examination for evidence of express assurances. IRS agents may have given explicit assurances of confidentiality, but DOJ Tax has failed to prove this.

The government can establish implied confidentiality in two ways: by specifically showing that circumstances surrounding the investigation support an inference of confidentiality or by categorically establishing that a class of records merits a presumption of confidentiality. *Cooper Cameron Corp.*, 280 F.3d at 551. *Landano* provides that the inference could be supported by reference to more narrowly defined generic circumstances, and "when circumstances such as the nature of the crime investigated and the witness' relation to it support an inference of confidentiality, the Government is entitled to a presumption." 113 S.Ct. at 2024. The Fifth Circuit in *Cooper Cameron Corp.* cited what it termed an authoritative survey of post-*Landano* cases, which found a categorical presumption of implied confidentiality in investigations of "organized crime, murder, drug trafficking, extortion, illegal possession of firearms, domestic terrorism, national security, loan sharking and gambling, armed bank robbery, bribery, interstate transportation of stolen property, and passport fraud and contempt of Congress." 280 F.3d at 552 (citing U.S.

DEPARTMENT OF JUSTICE, FREEDOM OF INFORMATION ACT GUIDE & PRIVACY ACT OVERVIEW 416–18 (GPO 2000) (collecting cases)).

■■■ The crimes of willfully attempting to evade federal diesel fuel excise taxes, and conspiracy to commit such offense, are crimes that typically require complex planning and an interfacing with numerous persons, among whom are refinery personnel where the diesel fuels are loaded, the defendant's truck drivers, and those often numerous retail outlets who purchase at bargain prices from the defendant the diesel fuels under invoicing that falsely shows that diesel fuel taxes were paid. Typically it is a far more complex fraud than passport fraud, which is on the "categorical list," and it tends to involve in its commission numerous often-unwitting persons, any one of whom may come to suspect or realize that the diesel fuel taxes are being evaded. With the diesel fuel tax then at 15¢ per gallon, a defendant who committed this crime typically reaped huge ill-gotten financial gains from sharply increased volumes of diesel fuel sales made at larger than customary actual margins off of cut-rate prices, falsely documenting that the prices included the payment of taxes. One's fear of disclosing or reporting such an on-going crime of such magnitude can be very real. In this sense, this particular kind of tax fraud-involving big dollars, complex operations, vast numbers of transactions, and many people-is not qualitatively unlike other crimes on the "categorical list," such as organized crime, loan sharking and gambling, and bribery. The Court is of the opinion that this crime is entitled to the same categorical presumption of implied confidentiality.

■■■ As an alternative holding, however, confidentiality may also be implied through the specific circumstances of a

particular investigation. In this case there are specific facts surrounding the investigation, including that the first grand jury investigation of McQueen was for obstruction of justice, that pretrial release on bond was denied to McQueen because of his threats and ability to harm witnesses, and that the safety of witnesses was of significant concern, that all justify a finding of implied assurances of confidentiality. The threat of retaliation and harassment is important in determining whether implied assurances of confidentiality should be found. *See, e.g., Halpern v. Fed. Bureau of Investigation,* 181 F.3d 279 (2d Cir. 1999) (holding that persons closely associated with the subjects of an investigation into suspected Communist ties and criminal activities involved in the unionization of the meatpacking industry during the 1930's were precisely those types of sources whose relation to the activities under investigation would have given them cause to fear retaliation in the event of disclosure); *McNamera,* 974 F.Supp. at 963 (concluding that an individual who informed on a drug runner had a tremendous expectation that the individual's identity would not be made public for fear of reprisal); *McQueen III,* 179 F.R.D. at 531–32 (taking into account the requester's ability to harm the government's informants, both physically and economically, if he were to discover their identities). After considering the specific circumstances surrounding the investigation of McQueen's crimes and of McQueen's disposition, and after reviewing the "Index of Withheld Documents," Document No. 35 ex. U, the Court finds that the informant information contained in documents 1–40, 43–45, 47, 49–52, 54 and 79 have been properly withheld or redacted under exemption (7)(D) because there was implied confidentiality for the informants consistent with the Supreme Court's holding in *Landano.*

2. *McQueen's FOIA Requests to DOJ Tax dated February 1, 2000, and November 21, 2000, and McQueen's FOIA Requests to IRS dated April 5, 1993 and January 26, 2000*

DOJ Tax and the IRS denied these four (4) FOIA requests because McQueen refused to pay the associated costs of searching for and copying the documents and did not qualify for a waiver of fees. *See* Document No. 35, at 24–27; Document No. 32, at 2–4, 6–9. The FOIA mandates that an agency charge a fee for searching, copying and reviewing files. 5 U.S.C. § 552(a)(4)(A). Fees may be waived, however, if the requester demonstrates that disclosure of the requested information (1) "is in the public interest because it is likely to contribute significantly to public understanding of the activities of the government," and (2) "is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). Because there is no evidence that McQueen is a "commercial" requester, the only issue is whether the requested information is in the public interest.

■ The FOIA provides:

In any action by a requester regarding the waiver of fees under this section, the court shall determine the matter de novo; *Provided,* That the court's review of the matter shall be limited to the record before the agency.

5 U.S.C. § 552(a)(4)(A)(vii). The FOIA requester bears the burden of proving entitlement to a fee waiver. *Larson v. Cent. Intelligence Agency,* 843 F.2d 1481, 1483 (D.C.Cir.1988). An agency may infer a lack of substantial public interest "[w]hen a public interest is asserted but not identified with reasonable specificity, and circumstances do not clarify the point of the requests." *Id.* (quoting *McClellan Ecological Seepage Situation v. Carlucci,* 835

F.2d 1282, 1285 (9th Cir.1987)). Conclusory statements on their face are insufficient. *See Nat'l Treasury Employees Union v. Griffin,* 811 F.2d 644, 647 (D.C.Cir.1987) ("With only conclusory allegations of the point of the requests before it ... [a]ny benefit to the general public that might flow from furnishing the requested information is less than obvious.").

▇▇▇ McQueen asserts that the public interest implicated in his requests is the functioning of the "Task Force and its implications to § 6103, a cover up in litigation, and a host of related issues," and that McQueen's counsel, as a tax professor at a local law school, has the ability to raise and present these issues in "serious fora—from the law school classroom to scholarly publications." Document No. 37, at 6.

McQueen's primary purposes for the requests, however, are to serve his private interests in obtaining information about the criminal case that led to his felony convictions and advancing his retaliatory private tort damages suit against individual federal employees and against the United States. Indeed, McQueen admits as much in his FOIA requests. *See* Document No. 35 ex. I, at 6 ("The requests are intended *in the first instance* to inform McQueen of the Governmental matters related to the Government's investigation of him.") (emphasis added); Document No. 32 ex. M, at 4 ("[M]y client's *sole need* for this information is to see that justice is done in the case of *McQueen v. United States* (S.D.Tex.—No.H–91–0329).") (emphasis added).

At least two cases have held that a criminal defendant's access to the government's investigative file principally serves private interests. In *McClain v. U.S. Dep't of Justice,* 13 F.3d 220 (7th Cir. 1993), McClain sought the FBI and Department of Justice files related to a criminal investigation that led to his conviction

for offenses arising out of an influence-peddling scheme, and McClain requested a fee waiver. The Seventh Circuit noted that "McClain and his lawyers pored over the prosecutor's files ... and had access to compulsory process to scare up additional evidence." *Id.* at 221. The court continued that McClain's "trial contributed, perhaps 'significantly,' to an understanding of Chicago's operations and the chicanery of hangers-on such as McClain; we doubt that more documents in the same vein have much to contribute to an understanding of the national government." *Id.* McClain disagreed, characterizing his investigation and trial "as more persecution than prosecution, and hinting gravely at conspiracies and racial discrimination," and claimed that certain groups would want to "bring injustices to light." *Id.* The court concluded that the FOIA request principally served McClain's "own interest in vindication," and this private interest differs from the "public understanding of the operations or activities." *Id.* "Anyone else other than McClain who wants these documents may ask for himself." *Id.*

The same conclusion was reached in *Rizzo v. Tyler,* 438 F.Supp. 895, 897 (S.D.N.Y.1977), in which a criminal defendant sought a fee waiver for "all copies of all documents in the Department [of Justice]'s files germane to any criminal investigation involving him." Rizzo initially admitted that he had a "great personal need for the material sought," including "to protect himself against allegedly slanderous statements that have been made concerning his involvement in organized crime" and "to prepare his defense to pending criminal charges." *Id.* at 899. However, mindful of the public interest requirement, Rizzo also alleged that disclosure and waiver of fees would benefit the general public by: "1) informing it of the Department's efforts in prosecuting organized

crime; and 2) correcting the public record of his criminal past, as recounted in a book entitled Dirty Money." *Id.* The court rejected Rizzo's proffered "public interest" rationale, finding that "the claimed public interest appears to be manufactured for the purpose of taking advantage of the waiver provision." *Id.* at 900. The court continued:

> As plaintiff admits in his complaint, "(t)he principal purpose for which the information is intended to be used is ... litigating pending criminal charges." There is nothing in plaintiff's allegation to distinguish it from any other inquiry made by a criminal defendant of the Department. Clearly, the "public interest" waiver was not intended to apply to all such inquiries.

*Id. See also McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1287 (9th Cir.1987) ("[I]nsofar as a requester seeks information merely to advance private lawsuits—or administrative claims—we will consider disclosure less 'likely to contribute ... to public understanding.' ").

McQueen's rationale for his fee waiver request is as transparent as those of *McClain* and *Rizzo*. Just as in those cases, McQueen argues that alleged misconduct in the investigation of his criminal case has some broader public appeal. As in *McClain*, that claim is insufficient to justify searching for and copying, at the expense of taxpayers, documents that even McQueen admits are principally for his own benefit. And like *Rizzo*, McQueen's initial admissions make his "public interest" claims seem disingenuous. Moreover, in his response, McQueen-who has the burden of proving his entitlement to a fee waiver-does not cite a single case in support of his position and makes no attempt to distinguish the holdings of *McClain* and *Rizzo*. McQueen's fee waiver requests are therefore denied, and the related FOIA counts are dismissed with prejudice. *See Judicial Watch, Inc. v. Rossotti*, No. 01–1612(ESH), 2002 WL 535803 (D.D.C. Mar.18, 2002) (denying fee waiver and dismissing case with prejudice); *S.A. Ludsin & Co. v. U.S. Small Bus. Admin.*, No. 96 CIV. 2146 AJP KMW, 1997 WL 337469 (S.D.N.Y. June 19, 1997) (same). Furthermore, McQueen will be precluded from any further litigation of the related FOIA counts. *See Gray v. U.S. Dep't of Justice*, Civ. A. No. 92–775 SSH, 1994 WL 447026, *2 (D.D.C. Aug.2, 1994) (denial of fee waiver bars relitigation in subsequent suit challenging assertion of FOIA exemptions).

3. *McQueen's FOIA Request to Department of Treasury (IRS), dated January 12, 1998*

In a letter dated January 12, 1998, McQueen submitted a FOIA request seeking records related to his administrative appeal of the denial of his April 5, 1993, request. Document No. 32, at 4–5. The IRS found three documents responsive to this request, but did not find a record that these documents were provided to McQueen before this suit was filed. In any event, the IRS did subsequently provide the three documents to McQueen, and copies are also attached as Exhibit N to the Declaration of Elissa Sissman, Document No. 32. McQueen argues that "[t]he IRS asserts that it has fully complied with the requests in the January 17[sic], 1998 requests. Since we have no way of verifying this claim, we cannot represent to this Court that the IRS is or is not entitled to summary judgment." Document No. 37, at 8.

McQueen has produced no evidence that the IRS did not conduct a search reasonably calculated to discover the requested documents. *See Schiller v. Immigration and Naturalization Serv.*, 205 F.Supp.2d 648, 655–56 (W.D.Tex.2002)

(citing *Grand Cent. P'ship v. Cuomo,* 166 F.3d 473, 489 (2d Cir.1999)). "The search by an agency is not required to be 'perfect' but instead must be reasonable." *Id. See also Garcia v. U.S. Dep't of Justice, Office of Information & Privacy,* 181 F.Supp.2d 356, 368 (S.D.N.Y.2002). Because the uncontroverted summary judgment evidence is that the IRS's document search was reasonably calculated to discover the requested documents, the Department of Treasury (IRS) is entitled to summary judgment on this FOIA count.

D. *Federal Defendants' Motion for Summary Judgment on Behalf of FBI, EOUSA, OPR, and Criminal Division, Department of Justice (DOJ) on FOIA Issues*

1. *McQueen's FOIA Requests to the FBI dated April 10, 1997, February 1, 2000, November 21, 2000, and December 27, 2000.*

The FBI submits the Declaration of Scott Hodes ("Hodes Declaration"), which attaches or identifies every document in the FBI's file related to its McQueen investigation. *See* Document No. 34, Hodes Declaration ex. LL. The documents serve as a *Vaughn* index in conjunction with the table of exemption symbols in the Hodes Declaration. For several documents, however, sufficient information has not been provided from which to determine whether an exemption applies.[10] After careful examination, the Court finds that the FBI has not met its burden of establishing exemptions for non-disclosure of the documents included in Document No. 34, Hodes Declaration ex. LL, at 11, 22, 29, 57, 60, 72, 76, 171–72, 176, 186, 203, 229–30, 232–33, 237, 269, 307–08, 311, 317, 319, 323, 345, 349, 358–63, 365–68, 370–73, 375 and 379. *See Reporters Comm. for Freedom of the Press,* 109 S.Ct. at 1472; *Ruotolo v. Dep't of Justice, Tax. Div.,* 53 F.3d 4, 9 (2d Cir.1995); *Schrecker v. U.S. Dep't of Justice,* 74 F.Supp.2d 26, 28 (D.D.C.1999). Because of the size of the production that was made in response to McQueen's requests, the Court will grant leave to the FBI to file within 14 days after the entry of this Memorandum and Order a supplemental *Vaughn* index in which should be included proper descriptions of the foregoing listed documents and explanations of the claimed exemption as to each such document.

McQueen has "eliminated from the Court's consideration any responsive documents that have a date after December 31, 1988, so long as they provide no indication that they refer to the Task Force or component member activities prior to July 15, 1988." Document No. 38, at 3. McQueen asserts that the critical category of documents that he seeks is that category of documents that relate to the Task Force. He has produced no evidence, however, challenging the adequacy of the FBI's search for responsive documents. Hodes's declaration includes a detailed explanation of the procedures used in the handling and processing of the documents responsive to McQueen's request. *See* Document No. 34, Hodes Declaration, at 6–9. The FBI has established in the summary judgment record that its document search was reasonably calculated to discover documents relating to the Task Force, if there were such documents, and McQueen has provided no controverting evidence to raise a fact issue on that proposition.

---

**10.** Some of these documents are so thoroughly redacted that the Court has an inadequate contextual basis to determine whether the asserted exemption applies. On other documents there appears only a coded exemption without any information or a general description that would explain the basis for the exemption claim. Still others are redacted or withheld but without a particular exemption being asserted.

The Court now turns to the FOIA exemptions asserted by the FBI for all documents other than those listed above for which a supplemental *Vaughn* index may be filed.

### (a) FOIA Exemption (b)(2)

██ Section (b)(2) of the FOIA provides an exemption from disclosure for "matters that are ... related solely to the internal personnel rules and practices of an agency ...." 5 U.S.C. § 552(b)(2). This exemption applies to routine matters of merely internal significance in which the public lacks any substantial or legitimate interest, as well as internal agency matters of some public interest where disclosure may risk circumvention of agency regulation or of the law. *Dep't of Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 1603, 48 L.Ed.2d 11 (1976); *see also Nat'l Treasury Employees Union v. U.S. Customs Serv.,* 802 F.2d 525, 528–30 (D.C.Cir.1986).

██ The FBI has invoked exemption (b)(2) to redact "source symbol numbers" from the documents released to McQueen in response to his several FOIA requests. Source symbol numbers are identifier codes assigned to confidential sources who "report to the FBI on a regular basis pursuant to an express grant of confidentiality." Document No. 34, Hodes Declaration at 21. As set forth by Hodes in his declaration, the symbol number is used "as an administrative reporting tool to protect the actual, sensitive identity of a source in written documents generated by the FBI." *Id. See also Linn v. U.S. Dep't of Justice,* Civ. A. No. 92–1406, 1995 WL 417810, at *6 (D.D.C.1995).

The summary judgment evidence shows that "disclosure of this information could impede the effectiveness of internal law enforcement procedures of the FBI," by leading to "the identification of the FBI source, as well as provid[ing] detailed, sensitive information concerning the scope and depth of the FBI's source program." Document No. 34, Hodes Declaration, at 12–13. Hodes concludes that "protection of these administrative identifiers is essential for the purpose of maintaining the integrity of the FBI's confidential source program." *Id.* at 13.

Several cases have held that informant identifier codes are properly withheld under the (b)(2) exemption because this information, if disclosed, "significantly risks circumvention of agency regulations or statutes" by undermining the integrity of ongoing investigations. *See Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051, 1074 (D.C.Cir.1981) (*en banc*); *see also Albuquerque Publishing Co. v. U.S. Dep't of Justice,* 726 F.Supp. 851, 854 (D.D.C.1989) ("The public has no legitimate interest in gaining information [pertaining to violator and informant codes] that could lead to the impairment of DEA investigations."). In response, McQueen provides no reason or evidence as to why this exemption should not apply, broadly claiming instead that "the exemption [ (b)(2) ] in this case is just a piggyback for the confidential informant privilege, so that the right to withhold the source symbol should rise or fall on the validity of the claim for exemption under (b)(7)(D) ...." Document No. 38, at 5. McQueen cites no case law or legal authority for this proposition, and Congress, after all, did create these as two separate exemptions. Accordingly, the FBI's withholding of the informant source symbol numbers is proper under FOIA exemption (b)(2).

### (b) FOIA Exemption (b)(7)(C)

██ According to Hodes, exemption (b)(7)(C) was asserted to protect: (1) the names of and/or identifying information concerning FBI special agents and/or sup-

port personnel; (2) the names of and/or identifying information concerning third parties of investigative interest; [11] (3) the names of and/or identifying information concerning third parties merely mentioned; (4) the names of and/or identifying data pertaining to state government employees; (5) the names of and/or identifying information concerning non-FBI federal law enforcement personnel; (6) the names of and/or identifying information concerning third parties interviewed by the FBI and/or state employees; and (7) the names of and/or identifying information concerning local government employees. Document No. 34, Hodes Declaration, at 11.

Regarding the privacy interests for protecting categories (1), (4), (5) and (7), Hodes claims that "publicity (adverse or otherwise) regarding any particular investigation may seriously prejudice [the federal and state government employees'] effectiveness in conducting other investigations." *Id.* at 14. Furthermore, according to Hodes, there is a privacy interest in protecting individual government employees "from unnecessary, unofficial questioning as to the conduct of this or other investigations, whether or not they are currently employed by the investigative agency." *Id.* Moreover, Hodes notes that many subjects of investigations "carry grudges which last for years and they may seek any excuse to harass [those government employees involved with the investigations] they deem responsible ...." Hodes concludes:

> The publicity associated with the release of an [government employee's] identity in connection with a particular law enforcement investigation could rekindle animosity toward that [government employee]. Release of these identities would constitute an unwarranted inva-

sion of their privacy. There is no public interest to be served by disclosing the identities of these [government employees] to the public.

*Id.* at 15.

McQueen argues that the identification of the FBI agents, personnel, state government employees and non-FBI law enforcement agents does not implicate any privacy interest because "the names of those persons ... appears [sic] in the context of their public duty," and they, unlike confidential informants, had no reasonable expectation of privacy. McQueen cites no case law or legal authority to support this proposition. Although McQueen notes that he need not submit a "public interest" other than "the citizen's right to know the operations of government," McQueen suggests that there is a public interest in "the operation of the Task Force, its implications to § 6103, and the possibility of a cover-up." Document No. 38, at 6. This is exactly the same inconsequential public interest McQueen claimed as rationale for his fee waiver, and it is insufficient to outweigh the privacy interests at stake.

Upon balancing the interest in preserving the secrecy of matters that could conceivably subject the government employees to annoyance or harassment in either their official or private lives against the public interest in being informed about government activities, the Court finds that exemption (7)(C) was properly asserted for categories (1), (4), (5) and (7). *See Putnam v. U.S. Dep't of Justice*, 873 F.Supp. 705, 715 (D.D.C.1995).

With respect to the privacy interest for protecting category (3), Hodes claims that "to release the names or other personal information about [the friends, family and employees of plaintiff] could cause unsolic-

---

**11.** McQueen does not contest this claimed exemption. *See* Document No. 38, at 6.

ited and unnecessary attention to be focused on them" and that "the presence of their identities in the FBI's tax fraud investigative files concerning plaintiff and his co-subjects may cast them in an unfavorable or negative light to the public." Document No. 34, Hodes Declaration, at 17. McQueen responds that category (3) "seems to include the names of witnesses and confidential informants," and that "such a broad sweeping right to withhold was never contemplated and would swamp the finely-tuned and limited exemption of (7)(D) relating to confidential informants." Document No. 38, at 7. Again, McQueen fails to provide any evidence and cites no case law nor legal authority to support his contention that (7)(D), which protects the identity of *confidential sources,* is "swamped" by such an application of (7)(C), which protects intrusions of *personal privacy.*

Upon balancing the interest in avoiding the embarrassment and reputational harm caused to third parties against the public interest in being informed about government activities, the Court finds under the evidence that exemption (7)(C) was properly asserted for category (3).

Regarding the privacy interest for protecting category (6) under the exemption, Hodes observes that the

> largest roadblock in successfully obtaining the desired information through an interview is fear by the interviewee that his identity will possibly be exposed and consequently, his being harassed, intimidated, or threatened with legal, economic reprisal or possible physical harm. In order to surmount these obstacles, persons interviewed must be assured that information received from them will be held in the strictest confidence .... The continued access by the FBI to persons willing to honestly relate pertinent facts bearing upon a particular investigation

outweighs any benefit plaintiff might derive from being furnished the names of those who cooperated with the FBI.

Document No. 34, Hodes Declaration, at 19. McQueen counters that "of course, the FBI attempts to end-run the holding in *Landano* with this assertion ...." Again, McQueen offers no case law or legal authority to support his contention that an assertion of exemption (7)(C) circumvents *Landano* as it applies to exemption (7)(D).

Having previously found a privacy interest in safeguarding third party interviewees from reasonably conceivable harassment and retaliation by McQueen, the Court must balance that interest against any countervailing public interest in disclosure of the information. Again, disclosure of the names and identifying information of third-party sources of information in McQueen's FBI investigation would contribute nothing to a public understanding of the operations or activities of these agencies. Accordingly, after balancing the interests, the Court finds that exemption (7)(C) was properly asserted for category (6).

(c) FOIA Exemption (b)(7)(D)

According to Hodes, exemption (b)(7)(D) was asserted to protect: (1) source symbol numbers and information provided by symbol numbered sources; (2) names of and/or identifying data and information provided by individuals interviewed (implied and express confidentiality); (3) state source symbol number and information regarding a state symbol numbered source; and (4) name of and/or information identifying a company that requested confidentiality from the FBI. Document No. 34, Hodes Declaration, at 11–12. These categories involve the identifying information of confidential sources who either provided information under expressed assurances of confidentiality or under circumstances

from which assurances of confidentiality can be inferred. *Id.* at 20. Again, McQueen argues that the FBI ignores *Landano* and that the FBI has not established that confidentiality between informants and criminal investigation agents was appropriate and expressly or necessarily agreed upon. *See* Document No. 38, at 8–9.

As found above at pages 32–33, specific circumstances surrounding the investigation and particularly the judicial finding of serious risk that "McQueen may threaten, injure, intimidate, or otherwise cause bodily injury or death to witnesses," justify a finding that there were implied assurances of confidentiality in this case. Furthermore, with respect to express assurances of confidentiality, the Court finds that the FBI has complied with *Cooper Cameron Corp.* by indicating where the express assurances of confidentiality are memorialized. *See* Document 34, Hodes Declaration, at 23 ("This 'expressed' desire for confidentiality is indicated in the processed documents by the words 'Protect' or 'Protect Identity' which follows the name of the individual being interviewed."). Accordingly, the Court finds that confidential source information has been properly withheld under exemption (7)(D) because there was both express and implied confidentiality for the informants in this case consistent with the Supreme Court's holding in *Landano.*

### (d) FOIA Exemption (b)(7)(E)

The FBI asserts the right to withhold rating information, and McQueen has withdrawn his request as to the redacted information dealing solely with the rating information. *See* Document No. 38, at 9.

### 2. *McQueen's FOIA Request to EOU-SA dated January 31, 2000*

Under 5 U.S.C. § 552(a)(6), and the DOJ's regulations at 28 C.F.R. § 16.9(c),

once the EOUSA has issued a determination on FOIA requests, the requester must appeal to the Office of Information and Privacy (OIP). *See* Document No. 34, at 2–3.

McQueen agrees that he did not appeal, and concedes that summary judgment on this request is appropriate. *See* Document No. 38, at 10.

### 3. *McQueen's FOIA Requests to OPR*

McQueen has limited his challenge to OPR documents OPR1–4, OPR1–8, OPR1–9, OPR1–15, OPR1–16, OPR1–24, OPR1–25, OPR1–26, OPR1–27, OPR2–36, OPR2–89, OPR2–90, and OPR2–92. McQueen does not challenge the application of exemption (b)(2) to OPR case file numbers or computer pathnames. The OPR has included a supporting declaration by Dale K. Hall ("Hall Declaration") and a detailed *Vaughn* index, Document No. 34, Hall Declaration ex. 35. The following FOIA exemptions are asserted by the OPR:

### (a) Exemption (b)(7)(C)

The OPR asserts the exemption to protect the identities of third-party individuals mentioned in or contacted by OPR during its investigation of McQueen's allegations of wrongdoing, and the identities of witnesses who provided investigative information for the consideration and assistance of OPR in its investigation. *See* Document No. 34, Hall Declaration ex. 35 at 3, 5–6. According to the *Vaughn* index and Hall's declaration, the privacy interests implicated are preventing "improper inferences of possible criminal behavior by the public, which could have stigmatizing effects," and the "institutional interest in protecting the personal privacy of individuals who provide investigative information to ensure future cooperation of witnesses, complainants and subjects." *See* Document No. 35, Hall Declaration ex. 35, at 3, 5–6. McQueen, with no legal support, argues first that OPR "seeks to end-run the

express holding of *Landano*," and secondly, that protecting individuals from the public's drawing improper inferences of criminal behavior is not a cognizable interest under exemption (7)(C). Document No. 38, at 11–12.

Both of the privacy interests asserted by OPR have been recognized and found to outweigh the public interest in disclosure. In *Nishnic v. U.S. Dep't of Justice*, 671 F.Supp. 776, 789 (D.D.C.1987), the court found that persons whose names are mentioned in records compiled during an investigation of a Nazi war criminal "may be stigmatized by their association with the atrocities revealed." *See also Commonwealth of P.R.*, 823 F.2d at 588; *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91–92 (D.C.Cir.1984) ("[I]ndividuals have a strong interest in not being associated unwarrantedly with alleged criminal activity; Protection of this privacy interest is a primary purpose of Exemption (7)(C)."); *Bast v. U.S. Dep't of Justice*, 665 F.2d 1251, 1254 (D.C.Cir.1981) ("(7)(C) exemption recognizes the stigma potentially associated with law enforcement investigations and affords broader privacy rights to suspects, witnesses, and investigators").

Having found a privacy interest, the Court must balance that interest against any countervailing public interest in disclosure of the information. In his response, McQueen has identified no genuine public interest that could be served by the disclosure of this information, and the Court has found none. The disclosure of the names and identifying information of grand jury witnesses or third-party sources of information in McQueen's tax fraud investigation would make no material contribution to the public understanding of the operations or activities of these agencies. Accordingly, after balancing the interests, the Court finds that exemption(7)(C) is properly asserted for OPR documents OPR1–4 and OPR1–9.

**(b) Exemption (b)(5)**

Hall testifies in his declaration that release of the information withheld in these documents "would reveal the scope of OPR's investigation, provide insight into OPR investigative processes, reveal potential investigative strategies and divulge the nature of deliberations with other DOJ components." Document No. 34, Hall Declaration, at 19. These are precisely the types of interests exemption (b)(5) was meant to protect and are not "documents which explain the formal adjudication of matters committed to the agency or the type of final opinions which must be disclosed." *Skelton v. U.S. Postal Service*, 678 F.2d 35, 39–42 (5th Cir.1982). Accordingly, the Court finds that the exemptions under (b)(5) claimed by the OPR for all of its remaining withheld documents (except for the three listed below in the next paragraph) were properly withheld or redacted under Exemption (b)(5).

**(c) OPR2–89, OPR2–90, and OPR2–92**

■ The record shows that McQueen has failed to exhaust his administrative remedies on these three documents because he never appealed OPR's partial denial (on December 22, 2000) of their production. McQueen does not contest his failure to exhaust administrative remedies. Accordingly, OPR is entitled to summary judgment on these documents. *See Voinche v. U.S. Dep't of the Air Force*, 983 F.2d 667, 668 (5th Cir.1993); *Hedley v. United States*, 594 F.2d 1043, 1044 (5th Cir.1979).

4. *McQueen's FOIA Requests to the Criminal Division dated May 10, 1994, January 12, 1998, February 1, 2000, February 9, 2000, and November 21, 2000*

In his response, McQueen does not purport to challenge the application of FOIA

exemptions by the Criminal Division, but instead, says the Court should "review in camera the Criminal Division documents for the reasons set forth in ... a motion and related pleadings filed in *McQueen III*." [12] Document No. 38, at 13. McQueen states that the Court never acted on that motion filed nearly eight years ago in *McQueen III* to "stay case and for related relief." It is best left that way. Suffice it to say, the Criminal Division was not a party to *McQueen III* and the motion does not address the application of FOIA exemptions to Criminal Division documents.

Nevertheless, in accordance with *Cooper Cameron Corp.,* the FOIA exemptions asserted by the Criminal Division will be individually examined. 280 F.3d at 543 ("[a] district court should not grant summary judgment based on a [government agency's] 'conclusory and generalized assertion,' *even if the FOIA requester has not controverted that assertion* ") (emphasis added).

(a) FOIA Exemptions (b)(6) and (b)(7)(C)

The Criminal Division has invoked exemptions (b)(6) and (b)(7)(C) to withhold all information concerning any investigations of Nancy K. Pecht, and Defendants Wong and Hughes, which resulted in no finding of wrongdoing.[13] Exemption (b)(6), not previously discussed, permits the withholding of:

personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

5 U.S.C. §§ 552(b)(6).

Both exemptions require that a court balance the individual's interest in privacy against the public's right to know. *See Fund for Constitutional Gov't,* 485 F.Supp. 1, 5 (D.D.C.1978), *aff'd,* 656 F.2d 856 (D.C.Cir.1981). According to the declaration of Thomas J. McIntyre ("McIntyre Declaration"), offered in support of the motion:

In this case, the plaintiff is seeking information pertaining to investigations of two Internal Revenue Service employees and a former Assistant United States Attorney based on allegations made by plaintiff's attorney. There can be no question that these individuals maintain a substantial privacy interest in the nature and scope of law enforcement proceedings against them. Public revelation of details of a criminal investigation must be expected to engender negative opinions about them and subject them to innuendo and embarrassment.

Document No. 34, McIntyre Declaration, at 8–9. McIntyre adds that "[d]isclosures of investigations of allegations which have never been substantiated, as noted, can only result in the subject employees suf-

---

**12.** McQueen's insistence here, and elsewhere in his responses, that the Court should undertake an *in camera* review of the documents at issue in this case is denied. Even with McQueen's proposed "compromises" to limit his requests, the task of reviewing hundreds of pages of documents is extremely burdensome and a waste of limited judicial resources. *See McNamara,* 949 F.Supp. 478, 483 n. 2 ("An in camera inspection is a poor substitute for a *Vaughn* index. Congress did not intend for a court to review every record an agency withholds."). Moreover, an *in camera* review is discretionary, and reliance

on detailed *Vaughn* indices and affidavits suffices to satisfy the government's burden of proving the application of exemptions. *See Stephenson,* 629 F.2d at 1145; *Martin v. Equal Employment Opportunity Comm.,* No. 85–2266, 1986 WL 31595 (S.D.Tex. March 25, 1986).

**13.** Alternatively the Criminal Division asserts exemption (b)(5), to the extent that the information is not protected by exemptions (b)(6) and (7)(C).

fering serious damage to their reputation, even in cases where their conduct has not been wrongful in any way." *Id.* at 10.

As noted above, these privacy concerns have consistently been recognized and found to outweigh the public interest in disclosure. *See Commonwealth of P.R.,* 823 F.2d at 588 (holding targets of criminal investigations, whose criminal involvement has not been publicly acknowledged, are protected from censure by exemption (7)(C)); *Weisberg v. U.S. Dep't of Justice,* 745 F.2d 1476, 1491 (D.C.Cir.1984) (finding that protected categories under exemption (7)(C) include persons who were investigated or interviewed and third persons whose names appeared in the documents at issue); *Nishnic,* 671 F.Supp. at 789 (same).

Having found a privacy interest, the Court must balance that interest against any countervailing public interest in disclosure of the information. The disclosure of information regarding unsubstantiated allegations against these individuals would make no contribution to the public understanding of the operations or activities of these agencies. Accordingly, after balancing the interests, the Court finds that exemptions (b)(6) and (7)(C) are properly asserted.

## V. *Order*

Based on the foregoing, it is

ORDERED that Individual Defendants' Motion to Dismiss or for Summary Judgment(Document No. 10) is GRANTED and Plantiff's *Bivens* claim is DISMISSED with prejudice; Defendant United States's Motion for Summary Judgment (Document No. 17) is GRANTED and Plaintiff's § 6103 claim is DISMISSED with prejudice; the Joint Motion for Summary Judgment of the United States Department of Treasury and Department of Justice, Tax Division (Document No. 31) is GRANTED and Plaintiff's FOIA claims are DIS-MISSED with prejudice; and Federal Defendants' Motion for Summary Judgment on Behalf of FBI, EOUSA, OPR, and Criminal Division, Department of Justice (DOJ) on FOIA Issues (Document No. 34) is GRANTED in all respects except only for the FBI's motion regarding FOIA exceptions claimed for its documents in Hodes's Declaration ex. LL, at pages 11, 22, 29, 57, 60, 72, 76, 171–72, 176, 186, 203, 229–30, 232–33, 237, 269, 307–08, 311, 317, 319, 323, 345, 349, 358–63, 365–68, 370–73, 375, and 379 ("Defective Exceptions"), and Plaintiff's FOIA claims are DISMISSED with prejudice except only for the FBI's Defective Exceptions. It is further

ORDERED that the FBI within fourteen (14) days after the entry of this Order may file a supplemental *Vaughn* index and accompanying affidavit to provide proper descriptions of the documents identified as Defective Exceptions, together with appropriate explanations for each exemption claimed. The FBI shall produce for McQueen any of such Defective Exceptions that are not included in its supplemental *Vaughn* index, and certify to the Court that production has been made. Plaintiff may file a response only to the Supplemental Vaughn Index within seven (7) days after it is served on Plaintiff.

The Clerk shall notify all parties and provide them with a true copy of this Order.